777 F.2d 1353
 54 USLW 2306, 3 Fed.R.Serv.3d 962
 Elizabeth BULTHUIS, Plaintiff-Appellant,
v.
REXALL CORPORATION, Upjohn Company, Merck & Company, Inc.,
E.R. Squibb & Sons, Eli Lily & Company, Miles Laboratories,
Warner-Lambert Company, Abbott Laboratories, and White
Laboratories, Inc., Defendants-Appellees.
 Nos. 84-6090, 84-6145.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 4, 1985.
Decided Dec. 3, 1985.
 
 David Jaroslawicz, Los Angeles, Cal., for plaintiff-appellant.
 James C. Martin, Adams, Duque, & Hazeltine, Los Angeles, Cal., Peter W. Davis, James C. Martin, Richard J. Heafey, Crosby & Heafey, Oakland, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before BROWNING, Chief Judge, CHAMBERS, Circuit Judge, and COYLE*, District Judge.
 PER CURIAM:
 
 
 1
 Defendant drug manufacturers were granted summary judgment on the ground there was no genuine issue that plaintiff's mother did not take Diethylstilbestrol (DES) during her pregnancy with plaintiff. We reverse.
 
 
 2
 Plaintiff's mother had three miscarriages before the birth of Elizabeth, her fourth child. Thirty years later plaintiff's own pregnancy was terminated and surgery was performed because of cancer of the cervix. Plaintiff sued the seven pharmaceutical companies that manufactured and marketed DES during the time of her mother's pregnancy with plaintiff under theories of strict liability, negligence, and breach of implied warranty, alleging that her injuries were caused by her mother's ingestion of DES during her pregnancy to prevent a miscarriage. Defendants moved for summary judgment, arguing that the evidence obtained on discovery undisputedly showed that plaintiff's mother had taken progesterone, not DES, during her pregnancy with plaintiff. The court granted summary judgment. Plaintiff appeals.
 
 
 3
 Defendants have the "burden of showing the absence of any genuine issue of fact." Adickes v. S.H. Kress & Co., 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). "[F]acts and inferences must be viewed most favorably to" plaintiff. Aronsen v. Crown Zellerbach, 662 F.2d 584, 591 (9th Cir.1981). See also Dalke v. Upjohn Co., 555 F.2d 245, 248 (9th Cir.1977). If testimony conflicts so "that a result other than the district court's conclusion is possible," this court must reverse because "neither an appellate court nor a trial court are permitted to weigh the evidence, pass upon credibility, or speculate as to the ultimate findings of fact." Id. To defeat summary judgment in the district court plaintiff was required to present evidence of specific facts showing that contradiction of the drug companies' theory of non-liability is possible. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir.1978). Our review is de novo. Jewel Companies, Inc. v. Pay Less Drug Stores Northwest, Inc., 741 F.2d 1555, 1559-60 (9th Cir.1984).
 
 I.
 Exclusion of Hearsay
 
 4
 In opposition to summary judgment, plaintiff presented her mother's deposition testimony that in 1952 her attending doctor told her she was being given "stilbestrol" --another name for DES. The district court declined to consider this testimony, holding it was hearsay and not admissible under Fed.R.Evid. 803(4) or 803(24). We agree. Rule 803(4) applies only to statements made by the patient to the doctor, not the reverse. Rule 803(24) requires guarantees of trustworthiness not present here--the statement of plaintiff's mother was plainly self-serving and no corroboration was available.
 
 
 5
 The court also declined to consider the affidavits of Dr. Sack and Dr. Townsend presented in opposition to the motion. Dr. Sack stated he had observed " 'changes' in the tissue of [plaintiff's] vaginal area which, in my opinion, were caused by her mother's ingestion of the drug diethylstilbesterol [sic] (DES) while she was pregnant with" plaintiff. Dr. Townsend, who operated on plaintiff's cancer, said in his affidavit his examination of plaintiff "showed changes that are commonly seen in DES exposed offspring and rarely seen in non-DES exposed individuals." Dr. Townsend's post-operative reports also reflected his opinion that plaintiff's injuries were caused by DES.
 
 
 6
 The district court held the declarations of Doctors Townsend and Sack were insufficient to defeat summary judgment, stating:
 
 
 7
 Although expert testimony may defeat summary judgment, the declaration must put forward facts or a reasonable basis for the opinion. A declaration which simply presents an expert opinion without factual support is inadequate to defeat summary judgment.
 
 
 8
 It is not clear whether the district court ruled that a declaration of expert opinion was not admissible evidence without a recitation of the facts upon which the opinion was based, or that such a declaration in an affidavit, though admissible, was insufficient to create an issue of disputed fact barring summary judgment in the circumstances of this case. We think the ruling was wrong on either ground.
 
 
 9
 By the express terms of Fed.R.Evid. 705, "[t]he expert may testify in terms of opinion or inference and give his reasons therefore without prior disclosure of the underlying facts or data unless the court requires otherwise." The court did not "require otherwise" in this case; it simply accorded the declarations of opinion no weight and granted summary judgment against plaintiff.
 
 
 10
 The court apparently rejected Dr. Sack's declaration solely on the ground that Dr. Sack's affidavit did not include the facts on which his opinion was based, remarking "Dr. Sack's declaration ... does not state facts setting forth the basis for reaching the opinion that plaintiff's condition was caused by DES." But Dr. Sack said he based his opinion upon " 'changes' in the tissue of [plaintiff's] vaginal area." In view of the presumption established by Rule 705 that supporting facts need not be stated unless requested, it would be unfair to grant summary judgment against plaintiff without affording an opportunity to supply them. If the judge in his discretion decided more detail was desirable, plaintiff should have been permitted to supply it.
 
 
 11
 The district court discounted Dr. Townsend's declaration on a different ground, stating, "[A]lthough he states that plaintiff's condition is commonly associated with cases involving DES, he offers neither expert testimony that plaintiff was exposed to DES nor facts to support such an opinion." But Dr. Townsend stated that the changes he observed in plaintiff's tissue were "commonly seen in DES exposed offspring and rarely seen in non-DES exposed individuals." This was a statement of fact, and it is a reasonable inference from this fact that plaintiff's mother had taken DES during her pregnancy with plaintiff. As the party against whom summary judgment was sought, plaintiff was entitled to have such inferences drawn in her favor.
 
 
 12
 The district court relied on United States v. Various Slot Machines on Guam, 658 F.2d 697, 699-701 (9th Cir.1981), and Thornhill Publishing Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir.1979). But neither of those cases support the exclusion of the expert opinion evidence in this case.
 
 
 13
 Thornhill is farthest from the mark. It does not involve expert testimony. The court held inadequate to bar summary judgment the affidavit of a businessman which stated that an alleged violation of the Sherman Act affected interstate commerce, but did not provide specific facts supporting this conclusion. The court held the affidavit failed to meet the requirement of Fed.R.Civ.P. 56(e) that affidavits in opposition to a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial."
 
 
 14
 Slot Machines, like this case, does involve affidavits of expert opinion in opposition to summary judgment. The court held that "in the context of a motion for summary judgment, an expert must back up his opinion with specific facts." 658 F.2d at 700. It thus presents the possible tension between the requirements of Rule 56(e) that such affidavits "must set forth specific facts," and the provision of Fed.R.Evid. 705 that an expert may state his opinion "and give his reasons therefore without prior disclosure of the underlying facts or data."
 
 
 15
 In Slot Machines, the issue was whether certain machines were subject to forfeiture as "gambling devices" within the meaning of 15 U.S.C. Sec. 1171(a)(1) and (2), setting out the characteristics of such devices. The government filed a motion for summary judgment supported by affidavits detailing physical characteristics of the machines sought to be forfeited that appeared to bring them within the statutory definition. In opposition to the motion the owners submitted affidavits of two experts on coin-operated machines which simply asserted the devices were not gambling machines but "Electronic Point-Maker Machines." The affidavits contained no facts to support the assertion, but only argument concerning irrelevant details which the court described as "pettifoggery." 658 F.2d at 699. Moreover, the court called counsel's attention to absence of factual support for the affidavits' general assertion and counsel admitted "we don't have a specific description of exactly why they are pointmakers." Id.
 
 
 16
 The contrast between this case and Slot Machines is clear. In this case both Dr. Townsend and Dr. Sack explained that they based their medical opinions as to the cause of plaintiff's cancer on changes they observed in the tissue of her vagina. Their statements as to the cause of plaintiff's cancer were therefore "more than ... bare conclusion[s]." Bieghler v. Kleppe, 633 F.2d 531, 533 (9th Cir.1980). Although they did not describe in detail how they arrived at their opinions, they sufficiently disclosed the basis for their conclusions absent any indication from the court that greater detail was desired.
 
 
 17
 These two cases demonstrate the proper accommodation between Rule 56(e) and Fed.R.Evid. 705. Expert opinion not accompanied by underlying facts or data is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion as to the matters addressed. If further facts are desired, the movant may request and the district court may require their disclosure. In this case, both experts stated their opinions were based on observed tissue changes and no greater detail was requested. The affidavits should have been considered.
 
 II.
 Presence of Disputed Issues of Fact
 
 18
 The defendants supported their motion for summary judgment with the deposition testimony of Dr. Ronald Scott, who attended plaintiff's mother during her 1951-52 pregnancy, that he and his co-practitioners generally prescribed a synthetic progesterone, not DES, to prevent miscarriages. He admits he does not remember what plaintiff's mother was prescribed. Another doctor who joined the group in 1951 corroborated Dr. Scott's testimony.
 
 
 19
 Defendants also supported their motion with the deposition testimony of plaintiff's mother and brother which they interpret as showing plaintiff's mother took the same drug during her pregnancies with plaintiff and with Edward, plaintiff's younger brother, and that during Edward's pregnancy she took progesterone. Finally, defendants offered the deposition of Dr. Sanders stating that in a 1982 pre-operation interview plaintiff's mother did not say she had taken DES, but told him she had taken progesterone "during four pregnancies, and that the offspring of one of these pregnancies, a daughter, had developed cancer of the vulva."
 
 
 20
 In opposition to the motion for summary judgment, plaintiff offered the affidavits of Drs. Townsend and Sack referred to earlier, stating that in their opinion based on tissue changes plaintiff's injuries were caused by DES exposure through plaintiff's mother. Plaintiff also relied on a statement in Dr. Scott's depositions that he sometimes prescribed DES for patients, particularly for headaches, and on plaintiff's mother's testimony that she had migraine headaches during the critical period. Plaintiff further relied upon the deposition of plaintiff's mother in which she qualified her statement that she took the same drug when pregnant with plaintiff as when pregnant with Edward, claiming she took two pills during her pregnancy with plaintiff and could not remember whether she took both during her pregnancy with Edward.
 
 
 21
 Drawing all inferences in favor of plaintiff and refraining from ruling on credibility, a jury could reasonably conclude that plaintiff's mother had ingested DES while pregnant with plaintiff. The summary judgment against plaintiff therefore cannot stand. In view of this conclusion, we also vacate the award of costs. Hoptowit v. Ray, 682 F.2d 1237, 1263 (9th Cir.1982).
 
 
 22
 REVERSED.
 
 COYLE, District Judge, dissenting:
 
 23
 I respectfully dissent from the majority opinion.
 
 
 24
 The majority holds that "[e]xpert opinion not accompanied by underlying facts or data is admissible and may defeat summary judgment if it appears that the affiant is competent to give an expert opinion as to the matters addressed." This conclusion essentially overrules United States v. Various Slot Machines on Guam, supra. The majority then holds that "[i]f further facts are desired, the movant may request and the district court may require their disclosure." This ruling puts the onus on the party opposing the expert opinion affidavit and on the district court to make the decision whether or not the expert opinion affidavit is sufficient for purposes of summary judgment and to prolong the proceedings in the event any or further facts or data are required. In my opinion, this procedure is wasteful of judicial time as well as open to ambiguity for the parties to a motion for summary judgment. It would be more expeditious and fair to the parties to the motion to follow Slot Machines and require that an expert must back up his opinion with specific facts.
 
 
 25
 In addition, I cannot agree that the affidavits of Dr. Sack and Dr. Townsend raise a genuine question of material fact that plaintiff's mother took DES during her pregnancy with plaintiff nor can I agree with the majority's conclusion from these affidavits that the doctors' opinions were based on tissue changes. Dr. Sack's affidavit avers in pertinent part:
 
 
 26
 5. I observed during such examination 'changes' in the tissue of Ms. Bulthuis' vaginal area which, in my opinion, were caused by her mother's ingestion of [DES] while she was pregnant with Ms. Bulthuis. I pointed this observation out to Ms. Bulthuis while discussing her condition with her, and I drew for her a sketch, which appears on the lower left hand portion of my chart, showing the area where I observed these tissue changes and upon which I noted that such changes were caused by DES.
 
 
 27
 The chart referred to by Dr. Sack is attached to his affidavit. The chart states, "Mother took DES." Dr. Townsend's affidavit avers in pertinent part:
 
 
 28
 6. I am of the opinion, my examination of Ms. Bulthuis showed changes that are commonly seen in DES exposed offspring and rarely seen in non-DES exposed individuals.
 
 
 29
 Dr. Townsend's reports of the surgeries which he performed on plaintiff state that the "[p]atient is DES exposed" and refer several times to plaintiff's "DES exposure" or removal of plaintiff's "DES related epithelium." Both the affidavits and the accompanying documentation thus are assuming an ultimate fact in this action, i.e., that plaintiff's mother took DES. It is clear that both doctors made this assumption because they were told that plaintiff's mother had in fact taken DES. There are, therefore, no facts in these affidavits to create a question of fact that plaintiff's mother took DES. Consequently, the doctors' opinions are not based on their expertise but rather on hearsay.
 
 
 
 *
 Honorable Robert E. Coyle, United States District Judge for the Eastern District of California, sitting by designation