**BALLY EXPORT CORPORATION, a
Delaware corporation,
Plaintiff-Appellee,**

v.

**BALICAR, LTD., a foreign corporation,
and Juliano Internacional S.A., a foreign corporation, Defendants-Appellants.**

No. 86–1150.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1986.

Decided Oct. 24, 1986.

As Amended Nov. 7, 1986.

Rehearing and Rehearing En Banc
Denied Dec. 5, 1986.

George B. Collins, Collins & Uscian, Chicago, Ill., for defendants-appellants.

James R. Latta, Berman, Fagel, Haber & Maragos, Chicago, Ill., for plaintiff-appellee.

Before WOOD and COFFEY, Circuit Judges, and SWYGERT, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Balicar, Ltd. ("Balicar") and Juliano Internacional S.A. ("Juliano") appeal the district court's denial of their motion to vacate a default judgment entered against them in the amount of $1,018,205.87. Balicar and Juliano, both foreign corporations, contend that the district court lacked personal jurisdiction over them when it entered the July 7, 1981 judgment in favor of Bally Export Corporation ("Bally"). We find that the district court properly concluded that Balicar and Juliano fell within the "transacting business" clause of the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, § 2-209 (1985), and accordingly we affirm the decision of the district court.

### I.

On January 30, 1981, Bally filed suit against Balicar and Juliano in federal district court for the Northern District of Illinois. The federal court's jurisdiction was based upon diversity of citizenship, 28 U.S.C. § 1332. Bally, the plaintiff, is a Delaware corporation which does business in Illinois. Balicar is a corporation organized under the laws of Cayman, a part of the British West Indies, and its principal

place of business is at Georgetown, Grand Cayman, British West Indies. Juliano is a Panamanian corporation and its principal place of business is Panama. Bally's final amended complaint alleged that Balicar and Juliano were liable to Bally for the purchase price of goods and merchandise, apparently gambling devices such as slot machines, which Bally manufactured in Illinois and sold to Balicar and Juliano. The amended complaint stated four counts, based upon the theories of an account stated and fraud, against both defendants. When neither defendant appeared, a default judgment was sought and granted on July 8, 1981.

For nearly four years, Bally was unable to execute upon its default judgment. Then, in 1985, Bally located assets which it believed belonged to the defendants. When Bally attempted to execute upon the 1981 judgment by bringing citation proceedings against L & G Management Consultants, Ltd., a foreign corporation which does business with both defendants, Balicar and Juliano moved the district court to vacate the 1981 judgment as being void for lack of personal jurisdiction. Fed.R.Civ.P. 60(b)(4).[1] The defendants claimed that the amended complaint failed to demonstrate a basis for either long-arm jurisdiction under the Illinois statute or jurisdiction based upon the Illinois common-law doing-business rule. Juliano also argued that it was not properly served.

The district court denied the defendants' motion to vacate the default judgment. The court found, among other things, that Balicar was the alter ego of Juliano, and Balicar and Juliano had transacted business in Illinois for purposes of the Illinois long-arm statute. The court concluded that the exercise of jurisdiction in the 1981 action was proper. The court also decided that Juliano had waived the service-of-process issue, although the court found later, in an order dated January 27, 1986, that

Juliano had failed to show that the service of process upon it was unsatisfactory, and furthermore that the admittedly proper service upon Juliano's alter ego Balicar was sufficient to constitute proper service upon Juliano. Both Juliano and Balicar appeal.

## II.

### A. Standard of Review

■ There was some confusion, both in the briefs and at oral argument, as to the proper standard of review. The general rule is that

> relief from a judgment under rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances. The decision to grant relief under rule 60(b) is left to the sound discretion of the trial court, and review of a trial court's decision to grant or deny rule 60(b) relief is subject to an abuse of discretion standard.

*United States v. Zima,* 766 F.2d 1153, 1157 (7th Cir.1985) (citing *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1204–05 (7th Cir.1984)). However, when the rule 60(b)(4) motion alleges that "the underlying judgment is void because the court lacked personal or subject matter jurisdiction," once the court decides that the allegations are correct "the trial judge has no discretion and must grant appropriate Rule 60(b) relief." *Textile Banking Co. v. Rentschler,* 657 F.2d 844, 850 (7th Cir.1981). *See also Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.,* 740 F.2d 1499, 1511 (11th Cir. 1984) (refusal to set aside default judgment an abuse of discretion where personal jurisdiction issue was unresolved); *Venable v. Haislip,* 721 F.2d 297, 300 (10th Cir.1983) (if judgment void for lack of jurisdiction, court must grant relief). Therefore, if the district court in the underlying action had no jurisdiction over the defendants it was a *per se* abuse of discretion to deny the defendants' rule 60(b)(4) motion.

---

**1.** Fed.R.Civ.P. 60(b)(4) provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void....

## B. Burden of Proof

Our circuit apparently has never had occasion to consider which party, on a rule 60(b)(4) motion, has the burden of proof to establish whether or not the district court in the underlying action had jurisdiction to enter the default judgment. Normally it is well established that the plaintiff must prove jurisdiction exists once it is challenged by the defendant. *See, e.g., Bobka v. Cook County Hospital*, 117 Ill.App.3d 359, 73 Ill.Dec. 3, 4, 453 N.E.2d 828, 829 (1st Dist.1983). There is not agreement, however, as to whether the burden remains upon the plaintiff after the plaintiff has obtained a default judgment.

Several courts have held that the burden of proving the facts supporting jurisdiction remains upon the plaintiff. *See Donnely v. Copeland Intra Lenses, Inc.*, 87 F.R.D. 80, 85 (E.D.N.Y.1980); *Rockwell International Corp. v. KND Corp.*, 83 F.R.D. 556, 559 n. 1 (N.D.Tex.1979); *DiCesare-Englar Productions, Inc. v. Mainman, Ltd.*, 81 F.R.D. 703, 705 (W.D.Pa.1979). These courts have decided that on a rule 60(b)(4) motion to vacate there is no reason to "reverse the normal placement when a party challenges ... *in personam* jurisdiction through a Rule 12 motion to dismiss." *Rockwell*, 83 F.R.D. at 559 n. 1. Therefore, when the issue in a rule 60(b)(4) motion is whether the defendant had sufficient minimum contacts with the forum state, these courts have placed the burden of proof on the plaintiff.

At least one court, however, has recognized that the burden of proof issue arises in a somewhat different context in a rule 60(b)(4) motion. In *Rohm & Haas Co. v. Aries*, 103 F.R.D. 541 (S.D.N.Y.1984), the court noted that the cases cited above

[fail] to consider that a defendant who was on notice of the original proceedings, had an opportunity, at that time, to op-pose jurisdiction by a Rule 12 motion. Such a motion avoids prejudice to the plaintiff because all evidence needed to prove jurisdiction is readily available. This is not true of a Rule 60(b) motion made, as in this case, almost 20 years after judgment. Should the burden of proof be lodged with the plaintiff, severe prejudice can result when evidence needed to prove jurisdiction is no longer available due to the passage of time. Accordingly, it is not unfair to place the burden on a defendant who has chosen to contest jurisdiction after judgment under Rule 60(b) rather than at the time of trial pursuant to Rule 12. This, of course, presumes that defendant was on notice at the time of the original proceedings.

103 F.R.D. at 544.

■ We believe that the approach taken by the court in *Rohm & Haas* is the better one. If the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a post-judgment rule 60(b)(4) motion. Therefore, since both Balicar and Juliano received timely notice of the 1981 proceedings,[2] they must prove that the district court lacked personal jurisdiction over them.

## C. Jurisdiction over the Defendants

■ A federal district court sitting in diversity looks to the long-arm statute of the state in which it is sitting to determine whether it has personal jurisdiction over the defendants.[3] *Madison Consulting Group v. State of South Carolina*, 752 F.2d 1193, 1195 (7th Cir.1985). Therefore, we look to the Illinois long-arm statute, which provides in relevant part that a nonresident submits to the jurisdiction of the Illinois courts by transacting business within the state. Ill.Rev.Stat. ch. 110, § 2–

---

**2.** Balicar concedes that the service upon it was proper. Juliano contests the service upon it, but we find that Juliano has waived the argument, and even if it had not waived the argument it failed to show that it did not receive timely notice. For the discussion of this issue, see *infra* § II. D.

**3.** Because the district court decided that jurisdiction was proper under the Illinois long-arm statute, the court found it unnecessary to determine whether Balicar and Juliano came within the Illinois common law doing-business rule.

209(a)(1) (1985).[4] Illinois courts have held that a single business transaction is sufficient to bring a foreign defendant within the statute, so long as the cause of action arises from the Illinois transaction. *See, e.g., Empress International, Ltd. v. Riverside Seafoods, Inc.*, 112 Ill.App.3d 149, 67 Ill.Dec. 891, 445 N.E.2d 371 (1st Dist.1983); *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27 (1st Dist.1973).

Chief Judge McGarr concluded in his November 14, 1985 opinion that Balicar and Juliano had submitted to Illinois jurisdiction by transacting business with Bally in Illinois. Specifically, Balicar contacted Bally in Illinois and arranged for Bally to ship equipment, which was manufactured in and shipped from Illinois, to Balicar's alter ego Juliano in Panama. The orders for the purchases were invoiced to Balicar and payment was to be made in Illinois. Chief Judge McGarr concluded that Balicar had initiated the transaction by contacting Bally in Illinois and entering into an agreement to purchase the equipment, an act which was "clearly a transaction of business within Illinois and therefore within the Illinois long-arm statute." Mem.Op. at 3.

■ The defendants argue that they transacted no business in Illinois. They argue that they had no contact with Illinois and that Bally never alleged that the contract was entered into in Illinois. We do not find their arguments persuasive.

The defendants concede that Bally alleged that it sold slot machines to Balicar at Balicar's "insistence and request" and then delivered them, at Balicar's "instruction," to Juliano. It is uncontested that the equipment was manufactured in Illinois. The affidavit of Robert Harpling describes prior orders which were made by Juliano and paid for by payments "rendered in Illinois by Balicar." Given that Balicar and Juliano failed to pay for the equipment at issue, this affidavit is relevant to demonstrate that the prior practice of the parties was for payment to be made in Illinois. These are all relevant contacts with Illinois.

We do not believe that the defendants' argument that the contract was not entered into in Illinois is compelling. Granted, the plaintiff did not plead the jurisdictional basis as artfully as it could have, a failing to which the plaintiff candidly admitted at oral argument. Nevertheless, although the plaintiff never explicitly stated, prior to oral argument, that the contract was entered into in Illinois, that is a fair conclusion one can draw from the plaintiff's pleadings and supporting documents, since Bally's principal place of business is Illinois and Balicar initiated the transaction with Bally.[5] We might take a different view had the defendants, who bear the burden of proof, offered an alternate location for the formation of the contract. We note that the defendants, although claiming no contract was formed in Illinois, do not offer any explanation as to where the contract originated if not in Illinois.

We find a recent Illinois case, *Empress International, supra*, to be closely analogous. In that case, the court upheld Illinois jurisdiction over a Wisconsin resident sued for failing to pay for food ordered from an Illinois corporation but shipped from New York to Wisconsin. The court stated:

> (c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section.

**4.** The Illinois statute provides:

> § 2–209. Act submitting to jurisdiction—Process. (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of such acts:
> (1) The transaction of any business within this State; ....
> \* \* \* \* \* \*

**5.** Although neither party explained exactly how the contract came into being, Bally did present the affidavit of Robert Harpling in which he testified that the practice of the defendants, at least with respect to prior orders, was to place them by telephone and telex messages to Bally in Illinois.

What is important is that the defendant voluntarily entered into a business transaction with an entity he knew, or should have known, was an Illinois resident. In addition, the contract which is the subject matter of this action was formed in Illinois when plaintiff accepted defendant's order. Finally, we find that the contract was performed in Illinois, in that the order was received here and the goods requested were shipped from here.... In sum, we find the instant action ... analagous [sic] to *Cook Associates* [where the court upheld jurisdiction based upon a single telephone call during which an oral contract was formed].

445 N.E.2d at 374.

■ We conclude that Balicar and Juliano failed to prove that they did not come within the jurisdiction of the Illinois courts. Like the district court, we reject the defendants' argument that Bally would have violated Illinois law by entering into a contract for the sale of gambling devices in Illinois. *See* Ill.Rev.Stat. ch. 38, § 28–1(a)(3) (1985). As the district court noted, it is too late for the defendants to raise a substantive defense to the contract. To the extent that the defendants argue that Bally would not have entered into this contract in Illinois because it was illegal and that is why Bally failed to state explicitly in the pleadings that the contract was formed in Illinois, we note that counsel for the plaintiff stated unambiguously at oral argument that the contract was formed in Illinois.[6] Were Bally concerned about criminal prosecution, this admission by counsel at oral argument would be just as damaging as a written admission.

The defendants argue that Illinois is retreating from its long-standing rule that the Illinois long-arm statute extends the jurisdiction of Illinois courts the fullest extent permissible under the due process clause of the fourteenth amendment. *See Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673, 679 (1957). Defendants cite *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981) and *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981) (which quoted the relevant passage from *Green*).[7] Having reviewed these cases, we conclude that the Supreme Court of Illinois was merely saying that its long-arm statute should have a consistent meaning which does not change with every ebb and flow in the United States Supreme Court's application of the fourteenth amendment, so long as the Illinois statute does not reach out beyond the due process limits. *See Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 344 (N.D.Ill.1984) (interpreting *Green* to mean that the Illinois long-arm statute "may lie within or may touch, but cannot extend outside, the fence marked out by due process requirements" as defined by the United States Supreme Court decisions). The district court's jurisdiction over the defendants in this case was firmly rooted in the consist-

---

6. It is Bally's position that it does not violate Illinois's gambling law by entering into contracts, such as the one at issue here, in Illinois.

7. In *Green,* the court said:
 In *Nelson v. Miller* ... this court said that the Illinois long-arm statute reflects a conscious purpose to assert jurisdiction over nonresidents to the extent permitted by the due process clause. We do not, however, regard this observation as the equivalent of declaring that the construction and application of [the long-arm statute] depend entirely upon decisions determining in what circumstances due process requirements would permit long-arm jurisdiction. Neither do we read *Nelson* to say that in applying [the statute] we should not construe the meaning and intent of our own statute irrespective of the due process limitations generally applicable to State long-arm statutes. A statute worded in the way ours is should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible. Thus, instead of turning to the array of tests which have been articulated to assist in determining whether long-arm statutes as applied exceed permissible constitutional boundaries, we prefer to resolve this appeal by looking to the meaning of our statute.
 427 N.E.2d at 1206. *See also Cook,* 429 N.E.2d at 850 (quoting the same language).

ent meaning which Illinois courts have given to the transacting-business section of the Illinois long-arm statute.

 Finally, jurisdiction over the defendants must be based upon sufficient minimum contacts between the defendants and Illinois to satisfy the due process clause of the fourteenth amendment. *See Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193 (7th Cir. 1985) (thorough analysis of Supreme Court and Seventh Circuit cases concerning personal jurisdiction). The defendants have concentrated their argument on the Illinois long-arm statute and do not press an argument based upon the fourteenth amendment. The defendants' acts in transacting business in Illinois are sufficient, for due process purposes, to bring them within the jurisdiction of the Illinois courts. Therefore, the district court was correct in determining that the court in the underlying action had jurisdiction to enter the default judgment.

*D. Service of Process on Juliano*

 Juliano also challenges the district court's memorandum opinion and order of January 27, 1986, in which the court denied Juliano's motion to reconsider and amend the court's memorandum opinion and order of November 14, 1985. Juliano asked the court to address an issue which the court did not address in the prior order, whether Juliano was duly served with process.[8] Although the district court's November 14 order can be read to say that Juliano waived this issue by not raising it until the reply brief, the court went on to consider and deny Juliano's motion on its merits. Having reviewed the district court's memorandum opinion and order of July 3, 1985, in which the court gave the defendants "20 days to file their memoran-

dums in support of their motions to vacate," we find that the defendants waived their service-of-process argument in the district court and thus cannot raise it now on appeal.[9] Although the defendants attempted to raise the argument in their motion for reconsideration, a motion for reconsideration is an improper vehicle to introduce evidence previously available or to tender new legal theories. *See Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985) (quoting *Keene Corp. v. International Fidelity Insurance Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir.1984)). Therefore, Juliano cannot now raise the service-of-process issue in this court.

 Even had Juliano not waived this issue, however, there is ample support for Chief Judge McGarr's ruling that Juliano failed to meet its burden of proving that service was inadequate. *See Jones v. Jones,* 217 F.2d 239, 242 (7th Cir.1954) (burden upon defendant to show judgment void for lack of service). Bally presented an affidavit of service with respect to Juliano which stated that the process server personally delivered a copy of the complaint to the "secretary of the Corporation who sits outside the office" of Juliano in Panama City, Panama. The affidavit and return of process both contain the proper office address.

 Juliano's argument is that the person served was not appropriate because she was merely a person who worked in the lobby of the building in which Juliano's office was located. Juliano offers two exhibits to support its argument. The first, an "affidavit" by Alberto Mordecai Tapis Champsaur, vice-president of Juliano, is insufficient as a matter of law in Illinois because it does not on its face show that

---

**8.** Balicar does not dispute that it was duly served with process.

**9.** The defendants argued in the district court that they thought the court was considering only the long-arm jurisdiction issue. That is not what the order of July 3, 1985, said and the defendants point to nothing in the record, and

our independent review revealed nothing, which supports their argument that the court limited the scope of its inquiry. That was certainly not Bally's understanding, because it pointed out in its memorandum in opposition to the motion to vacate that the defendants had dropped the service-of-process issue.

the "affiant" was under oath. *Theobald v. Chicago, Milwaukee & St. Paul Railway,* 75 Ill.App. 208, 61 N.E. 1089 (1st Dist.1898) (cited with approval in *Manuel v. McKissack,* 60 Ill.App.3d 654, 18 Ill.Dec. 66, 377 N.E.2d 219 (1st Dist.1978)). Furthermore, Champsaur's affidavit merely says that Juliano shared the office building and that Graciela Edith Camargo, who was not an employee of Juliano, directed customers to the various offices. Champsaur does not directly refute the delivery of a copy of the complaint to Juliano's office.

Sheila Donovan, the current secretary of Juliano, also submitted an affidavit, but it is likewise of little help to Juliano. She describes a young woman, apparently Camargo, as a sort of receptionist-elevator operator who was not an employee of Juliano. Donovan also states that ordinarily all papers "observably in English" were directed to Donovan, but no papers such as the complaint at issue here were handed to her. Like Champsaur's statement, Donovan's affidavit does not directly refute that a copy of the complaint was delivered to Juliano's office.

We note that both Donovan and Champsaur discuss the function of Camargo, but neither state that Juliano does not have a secretary or other employee sitting outside its office who received the service. Therefore, Juliano has made no attempt to rebut the plaintiff's evidence of proper service by the process server. Furthermore, even if service was made upon Camargo, Juliano failed to offer sufficient facts from which we could determine whether Camargo was authorized to act as an agent for Juliano.

█ Finally, even if Bally in fact did not serve an authorized agent of Juliano in Panama City, Panama, Bally's alleged failure is of no help to Juliano. Bally alleged in its original amended complaint, and the district court found in its memorandum opinion of November 14, 1985, that Juliano

was the "alter ego" of Balicar. Where one corporation so controls another corporation that, as a practical matter, the two entities function as one, service on one corporation is effective as to both. *I.A.M. National Pension Fund v. Wakefield Industries, Inc.,* 699 F.2d 1254, 1259 (D.C.Cir.1983). Balicar concedes service was effective as to it. Juliano has presented no evidence whatsoever to contradict the district court's alter-ego finding. If Juliano was not Balicar's alter ego, Juliano easily could have submitted evidence to show that the two are separate entities. Juliano did not, so service on Balicar was effective as to both defendants. The decision of the district court is

A<small>FFIRMED</small>.