**Amy SHIELDS, Plaintiff,**

v.

**ELI LILLY AND COMPANY, Defendant.**

Civ. A. No. 87-2166 (RCL).

United States District Court, District of Columbia.

Dec. 6, 1988.

Aarron M. Levine, Washington, D.C., for plaintiff.

Loretta M. Smith, Marshall Simonds, Goodwin, Procter & Hoar, Boston, Mass., and James A. Hourihan, Gail L. Heriot, Hogan & Hartson, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

Plaintiff Amy Shields brought an action in this Court alleging that she had suffered severe and permanent injury, including but not limited to, clear cell adenocarcinoma of the vagina, as a result of her exposure *in utero* to diethylstilbestrol (DES) manufactured, sold, distributed, and/or promoted

by the defendant. On September 26, 1988, the Court granted defendant's motion for summary judgment and dismissed plaintiff's complaint with prejudice, finding that despite having had ample time for discovery, plaintiff still failed to show sufficient, non-speculative evidence that she had indeed been exposed to defendant's DES *in utero.* Memorandum Opinion and Order at 697 F.Supp. 12, 14–15 (1988) (hereinafter "Memorandum Opinion"). The matter comes again before this Court on plaintiff's Motion for Reconsideration of Summary Judgment. Plaintiff argues that the Court, in granting summary judgment, failed to consider "certain matters contained in [plaintiff's] papers." Memorandum of Points and Authorities in Support of Plaintiff's Motion for Reconsideration of Summary Judgment at 1 (Oct. 6, 1988) (hereinafter "Plaintiff's Memorandum").

Plaintiff asks the Court to reconsider its ruling in light of seven specified factors. First, plaintiff argues that there was no inconsistency between plaintiff's mother's identification of the pills she purportedly took while pregnant with plaintiff and plaintiff's subsequent answers to defendant's interrogatories, which said that her mother did not remember the physical description of the pills, dates of ingestion, nor instructions for use. Plaintiff was asked on interrogatory what medications, if any, her mother had taken while pregnant with plaintiff. Then, in a multipartite question, prefaced with the condition "[i]f your mother took diethylstilbestrol during her pregnancy with you . . .", plaintiff was asked to describe the specific circumstances surrounding the ingestion, to wit, the name of the prescribing doctor, the pharmacy where the prescription was filled, the time period during which the drug was taken, the physical description of the pills, the instructions for use, and the purpose for which the medication was prescribed. To the first question, plaintiff responded that her mother had taken stilbestrol during her pregnancy. To the multipartite question, plaintiff supplied the prescribing doctor, the pharmacy where the prescription was filled, the time period during which her mother had taken the medication, and the

purpose of the prescription. However, she stated that her mother "did not remember" the physical description of the medication nor its instructions for use. Plaintiff now suggests, rather incredibly, that there was no inconsistency between those answers and her mother's *earlier* identification, in counsel's office, of little red pills that matched the ones she was purportedly prescribed during her pregnancy with plaintiff. Rather, plaintiff reasons that she was simply being meticulously correct, and answered the interrogatories as she did because her mother did not have a "specific memory" of having taken DES. However, plaintiff fails to explain why she answered the preceding interrogatory question by saying her mother took stilbestrol, nor why she why she filled in all of the other details of the prescription. Notwithstanding the obvious inconsistency, the Court did not "weigh the credibility of the evidence," as plaintiff complains, but gave plaintiff the benefit of the doubt and accepted as true both the statements of plaintiff and her mother.

 Second, plaintiff argues that the labor and delivery records of plaintiff's mother do not "negate exposure" to DES. Plaintiff's Memorandum at 4. Notably, the Court, in granting defendant's motion for summary judgment, did not find that the labor and delivery records *negated* ingestion, simply that those records did not support ingestion and tended to contradict it, which is completely accurate. However, as with the earlier described inconsistency between interrogatory answers and deposition testimony, the Court noted the discrepancy, but gave the plaintiff the benefit of the doubt anyway. On the other hand, there is no support whatsoever for plaintiff's bald assertions that the records were prepared by a resident unconnected with the case, much less that defendant sent promotional literature to "every physician in the United States . . . advertis[ing] and promot[ing] the use of DES in just such a case." Plaintiff's Memorandum. Nor will the Court now consider the promotional literature defendant purportedly circulated. A Motion for Reconsideration is not the

appropriate forum for introducing evidence which could have been introduced previously. *E.g., Sponberg v. Eli Lilly & Co.,* No. 87–7094, Slip op. at 2 (D.C.Cir. June 6, 1988) [851 F.2d 1501 (Table)] (motion for reconsideration "improper vehicle to introduce evidence previously available"), *quoting Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 404 (7th Cir.1986). In any event, plaintiff's argument cuts both ways, and therefore would not significantly change the analysis. While wide publicity may have made use of Eli Lilly's product more likely, it would also make mention of the medication taken more likely in the medical records, if only because the preparer would be more sensitized to asking whether the patient had been prescribed that medication.

■ Third, plaintiff complains that defendant "misrepresented" Nurse Clifford's use of the term "on occasion." Plaintiff's Memorandum at 5. The Court itself determined what Nurse Clifford meant by "on occasion" from the context in which the term was used. The terminology was not meant to imply, and the Court did not so reason, that Dr. Sinclair's use of stilbestrol was "haphazard[ ] or random[ ]." *Id.* On the other hand, neither Nurse Clifford's affidavit nor her subsequent deposition can reasonably be construed to imply that the doctor customarily or habitually prescribed stilbestrol, even "in the event of 1) staining, 2) bed rest and 3) continued staining." *Id.* As the Court noted in its Memorandum Opinion, Nurse Clifford described Dr. Sinclair's practice as follows: " 'The first thing he insisted upon was absolute bed rest. If they didn't respond to bed rest, he may have used, on occasion, some oral medications or injectable medications. It depends. Each situation was a little different.' " Memorandum Opinion at 13.

■ Fourth, plaintiff notes that "[d]efendant failed to advise the Court that the only variety or congener of DES *commonly used and recommended* in 1955 was Dienestrol, manufactured by White Chemical Company." Plaintiff's Memorandum at 7 (emphasis added). Further, plaintiff submits an affidavit of Professor Tice to show

that dienestol "was a scored, yellow tablet." *Id.* at 7, Atch 2. Plaintiff next differentiates, without support or further elaboration, between progesterone and synthetic estrogen. Notably, the only record mention of synthetic estrogen comes from the earlier affidavit of plaintiff's own expert, Professor Tice. In any event, notwithstanding the fact that plaintiff's current submission is untimely, *Sponberg v. Eli Lilly & Co.,* slip op. at 2, it still fails to provide the crucial nexus between plaintiff's mother and defendant, and certainly does not show, as plaintiff avers, that "the only small red pill commonly used to prevent miscarriage in 1955 was DES." Plaintiff's Memorandum at 8.

Fifth, plaintiff argues that the Court failed to grasp "[t]he true meaning" of *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which plaintiff explains, "only concerns itself with the sufficiency of evidence needed by a moving party, and … [leaves] it to the District of Columbia Circuit to determine what is sufficient evidence in opposing summary judgment." Plaintiff's Memorandum at 9. In point of fact, as this Court correctly pointed out in its Memorandum Opinion, *Celotex* itself holds that "the entry of summary judgment is appropriate where despite having had 'adequate time for discovery' the plaintiff still 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " Memorandum Opinion at 15, *quoting Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Unlike the situation on remand in *Celotex, Catrett v. Johns–Manville Corp.,* 826 F.2d 33 (D.C.Cir.1987), here the problem is not the resolvable one of having evidence not "in a state currently admissible," but the fatal defect of having failed to present evidence showing "a sufficient disagreement to require submission to a jury." *Catrett II,* 826 F.2d at 39. Contrary to plaintiff's assertion, plaintiff has not shown that the pill plaintiff's mother recalls taking "looks like DES, not a congener … or a progestrone." Plaintiff's Memorandum at 9. Finally, plaintiff disputes defendant's reliance on *Tidler v. Eli*

*Lilly,* 851 F.2d 418 (D.C.Cir.1988). However, here, as in plaintiff's description of the facts in *Tidler,* plaintiff's mother has not "come close to identifying the manufacturer of the DES involved," nor even that there was DES, and not one of its cogeners, involved. Plaintiff's Memorandum at 10.

■ Sixth, plaintiff notes that, contrary to defendant's oral argument, *Bulthuis v. Rexall Corp.,* 777 F.2d 1353 (9th Cir.1985), was not vacated. Plaintiff's Memorandum at 10. Defendant responds by noting that its oral argument was technically correct, given the Shepard's annotation of the case history. Nonetheless, *Bulthuis,* even if viable, and even if this Court were to find it persuasive, does not significantly enhance plaintiff's position. In *Bulthuis,* the 9th Circuit held that a DES plaintiff could resist a motion for summary judgment with testimony of her treating physician that he sometimes prescribed DES and with expert testimony that plaintiff was very probably exposed to DES. *Bulthuis,* 777 F.2d at 1353. Here, unlike in *Bulthuis,* plaintiff's expert opined that it was very probable that plaintiff was exposed to DES "or its cogeners." Memorandum Opinion at 13, and the treating physician's nurse testified that the physician sometimes prescribed DES, but sometimes prescribed other medications as well, *id.* at 13.

Seventh, plaintiff asserts that "the test at this stage of the proceedings is not 'whether a fair-minded jury could reasonably conclude that the plaintiff is entitled to a verdict[,]'" but "whether there is any evidence in the record from any source which if reduced to admissible evidence, could create a reasonable inference that the plaintiff was exposed to DES." Plaintiff's Memorandum at 11–12, *quoting* Memorandum Opinion at 14 and *citing Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("We do not mean that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). The test this Court applied in granting defendant's motion for summary judgment was the test articu-

lated by the Supreme Court in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), which, notwithstanding plaintiff's arguments to the contrary, is binding on this Court. Furthermore, plaintiff overlooks the fact that the deficiency in her evidence is not that it was in an inadmissible form, simply that there was not sufficient evidence to create a *reasonable* inference. As the Court properly found, "[t]aken together, plaintiff's evidence does not provide a basis for anything other than sheer speculation. It certainly does not provide a basis upon 'which the jury could reasonably find for the plaintiff.'" Memorandum Opinion at 15, *quoting from Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512.

Finally, plaintiff's motion asks the Court whether "a young woman suffering from a rare type of cancer, (which [plaintiff parenthetically notes without support or further elaboration] did not exist before the marketing of DES) is unable to bring her dead doctor or her lost prenatal records into court 33 years later, is she automatically barred from trial?" This Circuit's decision in *Richardson v. Richardson–Merrell, Inc.,* 857 F.2d 823, 832–33 (D.C.Cir.1988), is instructive. In that case, which was, like the case at hand, a prenatal products liability case for alleged *in utero* injury to the plaintiff, the Circuit Court of Appeals concluded that although "[t]he circumstances of the case are tragic and Carita Richardson's plight evokes the utmost sympathy, ... it is not only appropriate but indeed imperative that the court remain vigilant to ensure that neither emotion nor confusion has supplanted reason." *Id.* The plaintiff in a case such as this is not "automatically barred from trial," as plaintiff queries. Nor does the plaintiff, because she is sympathetic and her plight tragic, face a burden lighter than any other plaintiff in overcoming a defendant's motion for summary judgment. Plaintiff here has simply failed to meet that burden.

Wherefore, having carefully considered the plaintiff's motion for reconsideration, the defendant's opposition thereto, plaintiff's reply, and the entire record of this case, it is hereby

ORDERED, that plaintiff's motion for reconsideration is denied.

SO ORDERED.