# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 22, 2007      Decided November 27, 2007

No. 07-7045

DEMOCRATIC REPUBLIC OF CONGO,
APPELLANT

v.

FG HEMISPHERE ASSOCIATES, LLC,
APPELLEE

———

Consolidated with
07-7046

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01314)
(No. 03cv01315)

———

*Jonathan A. Nockels*, pro hac vice, argued the cause for appellant. With him on the brief were *Stephen F. Malouf* and *Steven D. Cundra*.

*Eric A. Shumsky* argued the cause for appellee. With him on the brief was *Bradford A. Berenson*. *Neil H. Koslowe* entered an appearance.

Before: RANDOLPH and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: FG Hemisphere's predecessor-in-interest, which for simplicity's sake we call FG Hemisphere, brought two suits in district court under 28 U.S.C. § 1605(a)(6)(B), a provision of the Foreign Sovereign Immunities Act. In the suits FG Hemisphere sought to confirm arbitration awards it had secured against the Democratic Republic of Congo ("DRC"). The DRC did not appear, and the district court entered default judgments against it in September 2004 and January 2005. In June 2006, after some 13 months of conflict over an attempted execution by FG Hemisphere on the DRC's diplomatic properties and over discovery matters, the DRC sought to vacate the judgment, claiming that service of process had not been in full compliance with 28 U.S.C. § 1608(a) and that therefore the district court had no personal jurisdiction over the DRC when it entered the default judgments. The district court denied the motions to vacate. Because we find that the DRC waived its objection to the service of process by proceeding at length with post-default litigation, some of which had no emergency character, we affirm.

\* \* \*

28 U.S.C. § 1608(a) provides for service in courts of the United States upon a foreign state by four alternative means, each (after that of subsection (a)(1)) available only if the previously enumerated options are in some way foreclosed. Here it is undisputed that subsections (a)(1) and (a)(2) were unavailable. FG Hemisphere therefore initially invoked

subsection (a)(3), which provides for service "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." Although subsection (a)(3) seems not to require the name of the head of the ministry of foreign affairs, both the mailings were addressed to "The Democratic Republic of Congo, Leonard She Okitundu, Ministry of Foreign Affairs," at the correct address in Kinshasa. Unfortunately, Okitundu had resigned as foreign minister six weeks before FG Hemisphere launched the process and thus, obviously, by the time the two mailings arrived in Kinshasa. The exact fate of this attempted service under § 1608(a)(3) is unknown.

There being no response within 30 days, FG Hemisphere moved to § 1608(a)(4), which provides that if "service cannot be made within 30 days under paragraph (3)," it may be obtained by sending the necessary documents to the Secretary of State in Washington, to the attention of the Director of Special Consular Services; the Secretary of State is then to transmit the papers to the foreign state by diplomatic channels and to send the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted. This method of service was effected by early 2004.

For some time, however, the DRC did not appear in the litigation, and FG Hemisphere secured default judgments in September 2004 and January 2005. In May 2005 the DRC at last appeared, seeking to vacate writs of execution issued by the district court against two DRC properties in the District of Columbia; the DRC argued that the properties were diplomatic ones exempt from execution under 28 U.S.C. §§ 1609-1611. The district court rejected the DRC's claims without explanation; on appeal, in May 2006, we reversed and remanded for further proceedings. See *FG Hemisphere*

*Associates, LLC v. Democratic Republic of Congo*, 447 F.3d 835 (D.C. Cir. 2006).

Only then did the DRC raise an issue about service of process. In June 2006 it filed motions to vacate the default judgments for want of personal jurisdiction, arguing that, because of the misidentification of the foreign minister, service under § 1608(a)(3) had been defective, so that FG Hemisphere had failed to establish the predicate for service under subsection (a)(4), namely, that "service cannot be made within 30 days under paragraph (3)." The district court denied the motions without explanation, and the DRC filed a timely appeal.

FG Hemisphere asserts both substantive and procedural defenses for the district court rulings. It argues that inclusion of the erroneous name was not inconsistent with § 1608(a)(3), and that even if it was, the defect was not such as to undermine the contingency of § 1608(a)(4)—that service "cannot be made under paragraph (3)." It also asserts that the DRC's long silence on the matter, from its first appearance and participation in this litigation in May 2005 until its June 2006 motion to vacate, waived any objection to the district court's personal jurisdiction over the DRC. Agreeing with the waiver argument, we do not reach the substantive one.

Rule 12(g) and Rule 12(h)(1) of the Federal Rules of Civil Procedure provide that the defense of lack of personal jurisdiction, among others, is waived by its omission from motions asserting defenses under Rule 12 or a responsive pleading. In a case such as this, where the defendant's default has removed any occasion for these conventional opening defensive moves, the rule obviously cannot be applied literally. But courts have applied its rationale—that defendants should raise such preliminary matters before the

court's and parties' time is consumed in struggle over the substance of the suit—where a defendant has engaged in extensive post-default litigation without suggesting an infirmity in personal jurisdiction. Thus, in *Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731 (7th Cir. 1991), the court held that the defendant's participation in six years of post-default judgment litigation over asset discovery was sufficient to waive its right to challenge the service of process underlying the original judgment, *id.* at 733-34. See also *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986). And the First Circuit has found waiver of a personal jurisdiction defense where the defendant, though filing neither a Rule 12 motion nor a responsive pleading, filed an appearance and participated in multiple depositions. *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 996-97 (1st Cir. 1983).

Here the litigation proceeded for 13 months between the DRC's initial appearance and its claim that service of process had been inadequate. Most of the litigation, to be sure, revolved around the DRC's efforts to hold off execution against two properties the DRC claimed were immune under 28 U.S.C. §§ 1609-1611, the subject of our earlier opinion. The DRC's efforts to protect those properties of course had a certain emergency character, and we note that after our prior decision FG Hemisphere abandoned its request to execute against them. But of course an emergency loses some of its edge when it lasts for 13 months. Cf. *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Industries Fund*, 967 F.2d 688, 691-93 (1st Cir. 1992) (finding waiver through nine weeks' delay, mostly spent resisting a temporary restraining order, despite the litigation's emergency character and although defendant had not filed a Rule 12 motion or an answer).

Here, however, we need not rest a waiver finding *solely* on the DRC's omission of the service-of-process claim in the midst of these emergency efforts. The struggle to protect its diplomatic properties was not the only litigation of the DRC between its appearance in this action and its June 2006 assertion of its personal jurisdiction defense. FG Hemisphere sought discovery against the DRC in July of 2005, apparently for the first time. In September 2005, the DRC having failed to produce a single one of the requested documents, FG Hemisphere moved for an order directing compliance with its requests; next month the DRC filed an opposition to that motion to compel. Even in opposing FG Hemisphere's request for documents, the DRC made no mention of the now-alleged lack of personal jurisdiction; rather, it waited another eight months before flagging the problem. We find that the cumulative delay, encompassing disputes over both the properties and discovery, effected a waiver.

One final note: Litigation over the production of documents took place in only one of the two suits yielding the default judgments at issue here. But the documents sought were lists of all the DRC's assets and would have been equally useful to FG Hemisphere in seeking enforcement of either default judgment. Further, shortly after filing motions to vacate in both actions, the DRC joined FG Hemisphere in moving to consolidate the two cases in district court, the joint motion noting that "discovery issues will be common in both actions." Indeed, since consolidation, discovery has proceeded in both actions. Finally, in this appeal the DRC has made no argument that litigation activity in one suit should not be counted with respect to waiver in the other. Under these circumstances, we find that the pursuit of a discovery dispute in one action served to waive defendant's service-of-process objection in both actions.

Accordingly, the judgment of the district court is

*Affirmed*.