**ROCKWELL INTERNATIONAL CORPORATION, acting by and through its Collins Radio Group**

v.

**KND CORPORATION.**

**ROCKWELL INTERNATIONAL CORPORATION, acting by and through its Collins Radio Group**

v.

**WINDHAM BROADCASTING GROUP, a partnership composed of Kenneth N. Dawson and Randall Mayer, Kenneth N. Dawson, Randall Mayer, and XLS Broadcasting Corporation.**

Civ. A. Nos. CA 3–77–0866–F, CA 3–77–0868–F.

United States District Court, N. D. Texas, Dallas Division.

July 27, 1979.

Ernest E. Figari, Jr., Hewett, Johnson, Swanson & Barbee, Dallas, Tex., for plaintiff.

James A. Ellis, Jr. of Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas Tex., for defendant.

## ORDER AND MEMORANDUM OPINION

ROBERT W. PORTER, District Judge.

After hearing on April 21, 1978, this Court awarded default judgment in favor of Plaintiff Rockwell International Corporation ("Rockwell") against KND Corporation, Defendant in Civil Action No. 3–77–0866–F. Judgment by default was awarded the same day as to the defendants in Civil Action No. 3–77–0868–F: Windham Broadcasting Group, Kenneth N. Dawson, Randall Mayer, and XLS Broadcasting Corporation.

All defendants subsequently filed motions for relief from judgment pursuant to Rule 60(b), Federal Rules of Civil Procedure. As the sole basis for their motions, the Defendants claim that the judgments entered against them are void because the Court lacked jurisdiction over their persons. The Court held a hearing on the jurisdictional issue; based on the facts adduced at this hearing and on the affidavits and relevant

memoranda filed by the parties, I find that the Defendants' conduct in both cases display sufficient minimum contacts with the State of Texas to fairly permit the exercise of *in personam* jurisdiction by this Court. Consequently, I deny Defendants' motions for relief from judgment.

## I. Rule 60(b)

Rockwell has attacked the propriety of Defendants' challenge to the jurisdiction over their persons. It urges that the Court find that the prior defaults by Defendants created a bar to their later asserting a Rule 60(b) claim of no personal jurisdiction, and reasons that failure to file a timely Rule 12(b) motion renders any resulting default judgment inviolate against later challenge on this ground.

Rule 60(b)(4) provides the procedural rule granting relief from void judgments. Within this rule a prior judgment may be labeled void where the court granted it without jurisdiction over the parties. *In re Four Seasons Securities Laws Litigation,* 502 F.2d 834 (9th Cir. 1974). In determining whether relief should be granted, the court is without discretion; [1] its sole function is to decide whether the earlier judgment is void because the court lacked jurisdiction over the parties. *Jones v. Watts,* 142 F.2d 575 (5th Cir. 1974). Rockwell's argument of waiver does not require much discussion in the face of the rule's language permitting relief from void judgments.[2] It is well established that, in situations where the defendants have failed to answer and thus made no challenge to personal jurisdiction prior to default judgment being entered against them, they may move through Rule 60 to challenge the validity of a judgment. *See* 11 *Wright & Miller, Federal Practice & Procedure* § 2862 (Supp. 1979). *See also, Misco Leasing, Inc. v. Vaughn,* 450 F.2d 257 (10th Cir. 1971).[3]

---

**1.** In this regard, Rockwell contends that the burden of establishing that the earlier judgment issued without *in personam* jurisdiction must fall on the Defendants. Moreover, Rockwell claims that such a showing is fulfilled only through the presentation of "strong and convincing evidence." This assignment of the burden, if correct, would reverse the normal placement when a party challenges the existence of *in personam* jurisdiction through a Rule 12 motion to dismiss. In such cases, of course, it is the plaintiff who must shoulder the task of showing facts that permit an affirmative jurisdictional finding, *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), a burden that may not be shifted. *Jetco Electronics Indus. v. Gardiner,* 473 F.2d 1228, 1232 (5th Cir. 1966); *see also Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 490 n.7 (5th Cir. 1974).
The cases cited by Rockwell do not support its contention that the burden of proving an earlier judgment void for lack of *in personam* jurisdiction must fall on the defendant. These cases have placed the burden on the movant in Rule 60(b) cases where prior judgment allegedly was procured through fraud and where a challenge is made to service of process and the affidavit of return before the court establishes a presumption of regularity. *See, e. g., Hicklin v. Edwards,* 226 F.2d 410 (8th Cir. 1955). Cases involving Rule 60(b)(4) challenges to *in personam* jurisdiction do not possess characteristics favoring this placement; indeed, it is difficult to understand how such a burden would work. Although the cases decided under similar attack do not expressly consider this issue, it is apparent that the usual standard is contemplated. *See Misco Leasing, supra,* 450 F.2d at 259. *See also, In re Penco Corp.,* 465 F.2d 693, 694 n.1 (4th Cir. 1972); *Taft v. Donellan Jerome, Inc.,* 407 F.2d 807 (7th Cir. 1969). Thus, the court must be satisfied that sufficient contacts exist so that the exercise of jurisdiction is reasonable, and it is the plaintiff that typically offers events or circumstances that it characterizes as meeting state statutory and federal due process standards. *See Graciette v. Star Guidance, Inc.,* 66 F.R.D. 424 (S.D.N.Y.1975).

**2.** The rule declares in pertinent part, "[O]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void . . . .." Rule 60(b), Fed.R. Civ.P.

**3.** The rule may not be invoked where the issue of personal jurisdiction has been previously ·raised and decided adversely to the movant. *American Surety Co. v. Baldwin,* 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932).
Rockwell characterizes the substantive attack here as being in the nature of a Rule 12 motion and therefore subject to the temporal limitations attending that rule. Because such motions must be made before or concurrently within a responsive pleading, Rule 12(h), Fed.R. Civ.P., failure to do so waives its later assertion. Rockwell suggests the Court decline to

Having concluded that the Defendants' motions may be raised by this proceeding, I consider the merits of their challenge.

## II. In Personam Jurisdiction

Rockwell sold certain radio and broadcasting equipment for use in the Defendants' radio stations. A dispute later arose over the agreements, whereupon Rockwell invoked the diversity jurisdiction of this Court to sue the Defendants for non-payment of amounts allegedly due.

Collins Radio Group ("Collins") is a division of Rockwell, a Delaware corporation. Collins has its headquarters in Dallas County, Texas. Each Defendant is a nonresident of or corporation foreign to the State of Texas. None maintains a place of business in this state or has designated any other as its agent for purposes of service of process.

■ All defendants were served pursuant to the Texas long-arm statute, article 2031b, *Tex.Rev.Civ.Stat.Ann.* (Vernon 1964). That provision sets forth the rules governing amenability to and method of service of process on foreign corporations and on nonresidents. The Texas statute is made applicable to service in federal courts by Rules 4(d)(7) and 4(e) of the Federal Rules of Civil Procedure. It is to the aspect of amenability to service of process that the Defendants' challenges are directed. They claim that service of process was unauthorized because each lacked required contacts with the State of Texas. The manner of service of process is not here attacked.[4]

### A. Facts

Rockwell points to numerous contacts between the State of Texas and these Defendants to permit suit against them in this forum. The jurisdictional facts as to each group of defendants are set forth separately.

1. *The Windham Defendants—CA 3–77–0868–F* Windham is a partnership organized and existing in the State of Connecticut. Defendants Dawson and Mayers are partners of Windham, and each is a resident of Connecticut. The first contract forming the basis for this action against them was solicited in early 1975 by Collins through its New York salesman, Mr. Art Silver. The proposal was embodied in a form prepared by Collins. The form was signed by Dawson in his capacity as general partner of Windham. By affidavit, Dawson declared that all dealings with Mr. Silver took place in Connecticut and that any agreements between any of the Defendants and Collins occurred with Mr. Silver exclusively, all taking place in the State of Connecticut.

The first agreement, accompanied by a check representing a 25% down payment on the purchase price of the equipment, was given to Mr. Silver, who returned both to Collins' Dallas office. Like procedures were utilized in March 1975 for the execution of a security agreement and subsequent amendment: through its salesman, Collins

examine the issue of personal jurisdiction on a theory of waiver and instead require the Defendants to answer and defend on the merits. This analysis ignores the well-established principle applicable to Rule 12 motions that recognizes as a basis for personal jurisdiction a defendant's appearance in the lawsuit. Appearance implies a party's consent, either express or implied, to the court's jurisdiction over his person. *See* 5 Am.Jur.2d Appearance § 1. *Cf., Zelson v. Thomforde,* 412 F.2d 56 (3d Cir. 1969). Failure to timely object on a Rule 12 motion asserting this ground, therefore, precludes the party's assertion that the court thereafter acts without jurisdiction over his person.

The case cited by Rockwell for support does not compel a contrary analysis. *Bavouset v. Shaw's of San Francisco,* 43 F.R.D. 296 (S.D.

Tex.1967), barred assertion of want of *in personam* jurisdiction where the defendant in that case filed its answer and motion to dismiss after the time to answer had passed but before default judgment had been granted by the court. The court in *Bavouset* set aside a clerk's entry of default, permitted the defendant to answer, and found that waiver of the Rule 12 defense had occurred. In the cases before me, however, no appearance was ever entered prior to entry of final judgment, and thus Rule 60(b) governs. *See* 2 Moore's Federal Practice ¶ 4.02[3] at 4–46.

4. Pursuant to the Texas procedure mandated in article 2031b the complaints and summonses in these cases were served on the Secretary of the State of Texas as agent for each defendant.

prepared and delivered the documents to Windham and, after their execution by Dawson as partner, forwarded them to the Dallas office. In addition, some correspondence from Collins' Dallas office was directed to the Defendants during this period, and it appears that a Windham employee made several telephone calls regarding the agreement.

The terms of the agreement included a schedule of remaining payments, and a provision that payments were to be made to Collins Radio Company at its Dallas, Texas office.[5] Subsequent statements and invoices from Rockwell addressed to Windham, however, directed that payments were to be made to it at P.O. Box 93078, Chicago, Illinois 60670.

A second contractual provision asserted that delivery of the equipment purchased by the Defendants would be f. o. b. the place of location of the Collins factory making the shipment. The contract did not indicate that delivery would take place in Texas, but rather left the election of place of shipment to Collins. Some equipment under the proposal, produced and assembled by Collins in Texas, was shipped to the Defendants f. o. b. Richardson, Texas.

The contract did not specifically note that manufacture or assembly would occur in Texas. A portion of the equipment ordered was of a brand belonging to Collins or Rockwell, and it appears that these items were in fact manufactured and assembled by Collins at its facility in Richardson, Texas. A Collins employee who had dealt with the Defendants by telephone noted that the Richardson plant had been the exclusive place of manufacture for some of the parts for the previous ten years.

Windham's obligations under the first contract were assumed by XLS in June 1975.[6] A later, separate contract was negotiated and executed between Collins and XLS for radio and broadcasting equipment.

As had occurred in the prior transaction, Collins submitted a proposed agreement to its prospective buyer, which signed the document in Connecticut through its president, Kenneth Dawson. Collins' salesman then returned the document with XLS' down payment to the Dallas office. Thereafter, the security agreement covering the equipment earlier purchased was amended to encompass that purchased under the second proposal. The revision was executed by Dawson in Connecticut. Conforming to its previous procedure, Collins through its salesman returned the revised instrument to the Dallas office.

Terms of payment and shipment under the second agreement were identical to those contained in the first agreement. A part of the equipment ordered was manufactured and assembled by Collins in Richardson, Texas, from which location these pieces were shipped f. o. b. to XLS in Connecticut.

2. *Defendant KND—CA 3–77–0866–F*

KND Corporation is a corporation incorporated in and with its principal place of business in Connecticut, where it operates radio station WKND. Its principal shareholder is Kenneth Dawson, who serves as its vice-president. KND ordered radio and broadcasting equipment from Collins on six different occasions during the period from December 1975 to March 1976. The purchases were obtained on an open account agreement with Collins and aggregated over $6,000. In contrast to the negotiations surrounding the Windham orders, it appears that KND initiated the orders from Collins. The statements and invoices received from Collins stipulated that payment was to be made to the Illinois address. In part, some actual manufacture of the pieces ordered took place in Texas by Collins. Delivery of the items was f. o. b. Richardson, Texas.

---

**5.** Paragraph 1 of the General Conditions of Sale provides that the buyer ". . . agrees to pay Collins Radio Company . . . at its offices in Dallas, Texas for the articles described hereof . . . ."

**6.** Rockwell has preserved its claims against the Windham partnership and against its general partners, Mayer and Dawson.

### B. Discussion

In a diversity case, the federal court is bound by state law concerning the amenability of a person or a corporation to suit, as long as the state law does not exceed the limitations imposed by the due process clause of the fourteenth amendment. *Washington v. Norton Mfg., Inc.,* 588 F.2d 441 (5th Cir. 1979); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483 (5th Cir. 1974); *Arrowsmith v. United Press International,* 320 F.2d 219 (2d Cir. 1963). Therefore, in making my determination as to whether *in personam* jurisdiction existed over these defendants, I consider two separately justiciable issues: (1) whether the law of the state in which this district court sits confers jurisdiction over the persons of these defendants, and if it does, (2) whether the assertion of jurisdiction under state law comports with the basic due process requirement of the fourteenth amendment to the United States Constitution. *Product Promotions, supra* 495 F.2d at 489, citing *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1232 (5th Cir. 1973), and *Atwood Hatcheries v. Heisdorf & Nelson Farms,* 357 F.2d 847, 852 (5th Cir. 1966). *See generally* Annot., 27 A.L.R.3d 397 (Supp.1978).

1. *Texas law.* The applicable Texas law is article 2031b, under which Rockwell served all defendants and by which it claims they are amenable to service of process. That provision permits substituted service of process where a nonresident or foreign corporation engages in business in this state. Rockwell cannot point to traditional manifestations of "doing business," for these defendants have no apparent assets, office, agents or employees in Texas. Section 4 of article 2031b provides a broad definition of "doing business in state:"

Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State or the committing of any tort in whole or in part in this State.

*Tex.Rev.Civ.Stat.Ann.* art. 2031b § 4 (Vernon 1964).

Resolving a long dispute among its lower courts, the Texas Supreme Court has decreed that jurisdiction under article 2031b is limited only by the constraints of due process under the United States Constitution. *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977): "The question, then, becomes one of due process." Id. at 762.[7]

In a case decided subsequent to the announcement in *U–Anchor,* the Fifth Circuit set forth the analysis to be applied by a federal court sitting in diversity jurisdiction in considering the applicability of the Texas provision to the jurisdictional facts before it:

As for the contract portion of the Texas long-arm statute, for jurisdiction to lie [plaintiff] must make a prima facie showing that "(1) a contract to be performed in whole or in part within Texas existed between itself and the [defendants] and (2) the present suit arose out of that contractual arrangement."

*Walker v. Newgent,* 583 F.2d 163, 166 (5th Cir. 1978).

In determining whether the statutory requirements for jurisdiction are met,

---

7. Courts considering this language have found it not without difficulty, however, for despite its broad language, *U–Anchor* articulates a test more restrictive than that applied by the federal courts. *See* Thomas, Conflict of Law, Annual Survey of Texas Law, 32 Sw.L.J. 387, 389–93 (1978). Likewise, courts have divided in their opinions of whether the *U–Anchor* requirements set forth a due process test in Texas, which federal courts are not bound to follow, or whether the factors enumerated relate to statutory construction of article 2031b. *See* Note 15 Hous.L.Rev. 1054, 1061 n.61. *See also Docutel Corp. v. S. A. Matra & Matra Informatique,* 464 F.Supp. 1209, 1219–30 (N.D.Tex. 1979); *Navarro v. Sedco, Inc.,* 449 F.Supp. 1355, 1360 n.2 (S.D.Tex.1978), concluding that federal courts are not bound to follow Texas courts' interpretations of the due process clause.

"performance, contemplated or accomplished, is the touchstone . . . and it does not matter which [person] is to perform in Texas so long as some performance is to occur there." *Product Promotions, supra*, 495 F.2d at 492 n.11. The transactions forming the basis for these lawsuits brought by Rockwell involved apparent contemplation of payment obligations by the Defendants to be performed in Texas. In addition, actual performance on the part of Collins occurred through its partial manufacture, assembly and shipping of equipment in Texas. Thus, the element of performance in Texas is present to establish the prima facie showing required by the statute.

██ 2. *Federal due process.* Because Rockwell may reach the Defendants under the Texas long-arm statute, personal jurisdiction will obtain if that reach does not offend due process. The court's standard is whether the Defendants' contacts with Texas were such as to make it reasonable, in the context of our federal system of government, to require them to defend the particular suit brought there. *Shaffer v. Heitner*, 322 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The focus is to center on the relationship among the defendants, the forum and the litigation. *Id.* at 204, 97 S.Ct. 2569. Similarly, this circuit recently identified the ultimate goal governing the exercise of jurisdiction over defendants to be whether the court believes it fair to require them to defend in a distant forum. *Walker v. Newgent, supra*, 583 F.2d at 168. In that opinion the court of appeals for this circuit recited the test it had earlier formulated:

Only if the nonresident defendant has such "minimum contacts" with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and [substantial] justice'," *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), or if the defendant has performed some act "by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), may the forum, consistently with due process, extend its long arm to embrace it. *Jetco Electronic Industries*, 473 F.2d at 1234; *see also Product Promotions, Inc.*, 495 F.2d at 494.

*Walker v. Newgent, supra*, 583 F.2d at 168, citing *Great Western United Corporation v. Kidwell*, 577 F.2d 1256 (5th Cir. 1978) *rev'd on other grounds sub nom Leroy v. Great Western United Corp.*, —— U.S. ——, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

██ *Minimum contacts.* It is a well-settled proposition that an affirmative determination of minimum contacts requires "affiliating circumstances," *Hanson v. Denckla, supra*, 357 U.S. at 246, 78 S.Ct. 1228, and such a determination necessarily rests on the particular facts involved. Therefore, the court must weigh the nature and quality of the defendants' contacts with the forum to ascertain propriety of jurisdiction over them. *Id.* at 253, 78 S.Ct. 1228.

██ It is undisputed that none of the defendants in these cases has visited Texas in connection with the business relationship with Collins. Physical presence within the forum is not determinative, or course. *Shaffer v. Heitner, supra.* *See Wright & Miller, supra* at § 1069. No defendant in either case had a place of business in Texas, nor did any advertise in the state or do business of a substantial nature other than the facts noted above. *See Newton, Conflict of Law, Annual Survey of Texas Law*, 33 *Sw.L.J.*—(1979). Despite their lack of physical activity in Texas, however, it appears that the Windham Defendants evidenced requisite "minimum" contacts.

██ The decision in *Hanson v. Denckla* was clear in asserting as a condition that the defendant's conduct must be "purposeful:" the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. 357 U.S. at 253, 78 S.Ct. 199. It is true that it was

Collins that prepared and delivered all relevant documents to the Windham Defendants and which later returned them to its Texas office. Nevertheless, the Windham Defendants demonstrated a relationship with this state. They assumed the obligation to make payments in Texas. This single act alone might appear sufficient to support the mantle of personal jurisdiction in a proper case. *Arthur, Ross & Peters v. Housing, Inc.,* 508 F.2d 562, 565 (5th Cir. 1975). More significantly they ordered goods that were manufactured in and shipped from Texas. The decision in *McGee* involved a single contact by the defendant with the forum state that was held to be constitutionally adequate. *McGee* required and found due process satisfied because the contract upon which the suit was based had a substantial connection with the state.

■ The Fifth Circuit has offered guidance to demonstrate that the number of contacts does not determine jurisdiction. *Benjamin v. Western Boat Building Corp.,* 472 F.2d 723, 726 (5th Cir. 1973). The relevant consideration is whether the defendant's contact with the forum rests on something more substantial than mere fortuity, when viewed from the defendant's perspective, that the plaintiff happens to be a resident of the forum. *Product Promotions,* supra, 495 F.2d at 497 n.26. The circumstances of the orders here do not persuade that Collins' residence in this State is a fact fortuitous to the transactions between the defendants and Collins.

■ It is well established that activities outside the forum that have reasonably foreseeable consequences within may support a court's exercise of personal jurisdiction. *McGee, supra; Kidwell, supra,* 577 F.2d at 1266–67; *Product Promotions, su-*

pra, *In-Flight Services Corp. v. Van Dusen Air, Inc.,* 466 F.2d F.2d 220, 226 (6th Cir. 1972). The evidence does not show me that Collins acted merely as a clearinghouse for all items ordered. *Pedi Bares, Inc. v. P & C Food Markets, Inc,* 567 F.2d 933, 937 (10th Cir. 1977). Rather, I find that it was foreseeable that the orders placed with Collins Radio Group would entail the commercial consequences in the state that actually occurred. The fact that the Collins salesman solicited the orders does not compel my contrary finding for purposes of due process. The conduct by the Windham Defendants evidences instead that it purposefully availed itself of the privilege of carrying on activities from a Texas seller and manufacturer. *See Pedi Bares, Inc., supra,* 567 F.2d at 937. *See also Docutel, supra,* 464 F.Supp. at 1216.[8]

The foregoing observations apply even more strongly to Defendant KND, which purposefully acted to initiate the orders in issue and which benefited from extensions of credit by Collins.

■ *Reasonableness of subjecting defendants to suit in Texas.* The second test of fairness or reasonableness is likewise met here. In making this determination, no particular factor is decisive; rather the court should consider the interest of the state in providing a forum, the relative convenience of the parties, and basic equities. *Product Promotions, supra,* 495 F.2d at 498.

■ Texas has a general interest in providing a forum for its residents when nonresidents allegedly fail to fulfill contractual obligations. *Id.* at 498 n.29. Although it would appear that the relative conveniences

---

8. One court has noted that in cases of commercial activity, jurisdiction may depend on whether consensual activity potentially touched the forum as an indication that the defendant has purposefully availed itself of the privilege of conducting activities in the forum. *Church of Scientology v. Adams,* 584 F.2d 893 (9th Cir. 1978). By placing orders with this Texas corporation, these defendants satisfactorily evidence such purpose. Similarly, an inference of affirmative, purposeful decision to avail oneself

of the privilege of conducting business in Texas can be found where the defendant's contacts are deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws is reasonably foreseeable, if not foreseen, rather than a surprise. *Product Promotions, supra,* 495 F.2d at 496. The relationship between these defendants and the State of Texas does not rest on fortuity.

would suggest that Rockwell has extensive business dealings in the defendants' state of residence, the defendants have asserted no claim that hardship would accrue to them in defending claims in a Texas forum, and I find nothing in any event to suggest a violation of due process in this regard. *See Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). There is no evidence, moreover, to convince me that defense in Texas offends any traditional notions of fair play and substantial justice. The issue of failure to pay could be decided in Texas under such a factual situation, and I cannot find that it would be unfair to subject these defendants to suit in this forum. Moreover, my finding above that there exists a nexus between Texas and the defendants satisfies the requirement needed to make Texas a "fair" forum. *Kulko v. Superior Court of California*, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Milliken v. Meyer*, 311 U.S. 457, 463–64, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

■ Having made the above observations and findings, I conclude that the overall quality and extent of the Defendants' contacts with the State of Texas favor a finding that this court can exercise jurisdiction over them. My determination rests on my review of the pleadings,[9] and affidavits, and my conclusion results from my weighing and balancing the relevant considerations as they relate to the particular circumstances here noted. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Benjamin v. Western Boat Building Corp., supra*, 472 F.2d at 725. The Fifth Circuit has criticized the attempts of some courts to extract a defined group of factors from the Supreme Court cases, advocating instead that a more basic test be followed. *Product Promotions, supra*, 495 F.2d at 494–95 n.17. Recently the Supreme Court approved this view:

> Like any standard that requires a determination of "reasonableness" the "minimum contacts" test of *International Shoe* is not susceptible of mechanical applica-

tion; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present . . . We recognize that this determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable."

*Kulko, supra*, 436 U.S. at 92, 98 S.Ct. at 1697. This assessment has proved true in these cases. I have measured the facts in a common-sense fashion to conclude that jurisdiction was present when the default judgments were entered against the defendants in Civil Actions 3–77–0866–F and 3–77–0868–F. Therefore, the motions for relief from judgment filed by all defendants in these actions should be and are hereby denied.

So ORDERED this 27th day of July, 1979.

9. *See Black v. Acme Markets, Inc.*, 564 F.2d 681, 696 n.3 (5th Cir. 1977).