(November 30, 1995)

■ MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Respondent, v BERNARD CHIPETINE, Individually and as Trustee of BERNARD CHIPETINE PROFIT SHARING TRUST, Appellant. [634 NYS2d 469] —Order of the Supreme Court, New York County (Myriam Altman, J.), entered December 28, 1993, which granted plaintiff's cross-motion for summary judgment on liability, denied defendant's motion for summary judgment, and imposed sanctions of $10,000 each on defendant and his

counsel, payable to plaintiff's counsel, unanimously modified, on the law, to the extent of granting that branch of defendant's motion that sought dismissal of plaintiff's second cause of action as time barred and further modified, on the law, the facts, and in the exercise of discretion, by reducing the amount of the sanctions imposed on defendant and his counsel to $5,000 each, payable to the State Commissioner of Taxation and Finance and the Lawyers' Fund for Client Protection, respectively, and otherwise affirmed, with costs payable to plaintiff.

The salient facts are undisputed. In June 1982 defendant contracted with plaintiff to open an account for the Bernard Chipetine Profit Sharing Trust, an Employee Retirement Income Security Act pension plan, of which defendant is trustee. On or about March 25, 1986, plaintiff erroneously credited the account with 5,320 shares of Tyson Foods, Inc. An additional 5,320 shares were erroneously credited to the account after a stock split in April of 1986. In March 1987 defendant sold the 10,640 shares of Tyson for $324,958.12 and invested the proceeds in a money market fund with plaintiff. In April 1987 a 3-for-2 stock split occurred, leaving plaintiff short 15,960 shares.

In June 1987 defendant sold the money market shares and transferred the proceeds to another securities firm. In September 1989 plaintiff discovered the error, and had to cover its short position at a cost of $438,097.50. Defendant, while acknowledging the error, refused plaintiff's demand for reimbursement, having lost the bulk of the money in a failed business venture.

The IAS Court did not err in sustaining plaintiff's first cause of action for fraud. While the elements of a cause of action for "actual" or active fraud include a knowing or reckless false representation of a material fact (*Zaref v Berk & Michaels,* 192 AD2d 346, 348) and there was no misrepresentation here, there was *concealment* by the defendant of plaintiff's erroneous transfer of stock. "The suppression of material facts which a person is in good faith bound to disclose is evidence of and equivalent to a false representation" (60 NY Jur 2d, Fraud and Deceit, § 88). The defendant was in good faith bound to disclose an error of such monumental proportion, and therefore the absence of an active, purposeful misrepresentation is not fatal to the cause of action.

Furthermore, "[c]onstructive, or legal, fraud is an act done or omitted which amounts to positive fraud, or is construed as a fraud by the court because of its detrimental effect upon public interests and public or private confidence * * *. [C]onstruc-

tive fraud arises from a rule of public policy, or the confidential or fiduciary relationship sustained by one of the parties affected by the fraud toward the other" (60 NY Jur 2d, Fraud and Deceit, § 2; *see, Greenfield v Greenfield,* 123 NYS2d 19 [Sup Ct, Kings County 1953]). In this case, what defendant accomplished by his concealment of the true facts, obviously known only to him, is arguably tantamount to grand larceny, and it is clearly against public policy. Thus, even if defendant were correct that "actual" fraud was not sufficiently pleaded, constructive or legal fraud was. Defendant's alternative argument regarding the fraud claim, that it cannot be pleaded along with breach of contract in the complaint, is devoid of merit, as the CPLR allows causes of action to be stated "regardless of consistency" (CPLR 3014).

However, we are constrained to agree with defendant that the IAS Court erred in granting plaintiff summary judgment as to liability on the second cause of action which alleged conversion. The Tyson shares were erroneously credited to the defendant's account on March 25, 1986. On March 27, 1987, defendant sold the shares for cash and deposited the cash in a money market fund. Plaintiff's Federal action, commenced June 13, 1990 for violation of Federal securities laws, as well as the State claims asserted here, was dismissed because the Federal court viewed the case as one for conversion under State law.

Plaintiff's cause of action for conversion accrued on March 27, 1987, when defendant wrongfully sold the shares belonging to plaintiff for cash, because no demand for return and refusal occurred until after that date *(MacDonnell v Buffalo Loan, Trust & Safe Deposit Co.,* 193 NY 92, 101; *470 W. End Corp. v East Riv. Sav. Bank,* 102 Misc 2d 1024, 1027 [Civ Ct, NY County 1980]). Although the commencement of the Federal action on June 13, 1990 marked the end of the running of the Statute of Limitations (CPLR 205 [a]; *Dyer v Cahan,* 150 AD2d 172), the three-year period had already expired on March 27, 1990. Thus, defendant's motion for summary judgment to dismiss the second cause of action as barred by the Statute of Limitations should have been granted.

The third cause of action, for unjust enrichment, requires the court to determine "whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" *(Paramount Film Distrib. Corp. v State of New York,* 30 NY2d 415, 421). Although as defendant correctly notes courts will look to see if the benefit remained with the defendant, it will also look to see if defendant's conduct was tortious

or fraudulent *(supra)*. The defendant's conduct in this matter was, as we have already indicated, bordering on the larcenous, and equity does not favor allowing defendant to escape restitution.

Nor did the IAS Court err in sustaining the fourth cause of action, for breach of contract. While ordinarily it is essential to set forth the relevant portions of the contract claimed to have been breached (*Bomser v Moyle*, 89 AD2d 202, 203), here it was clear that, as noted by the IAS Court, defendant breached the duty of good faith and fair dealing implied in every contractual relationship.

Defendant's preemption argument is also devoid of merit. "Only State laws that purport to regulate, directly or indirectly, the terms and conditions of employee benefit plans are preempted" *(Planned Consumer Mktg. v Coats & Clark*, 71 NY2d 442, 449-450; *Sasso v Vachris*, 66 NY2d 28, 32).

Finally, while we do not condone the defendant's conduct, we find the sanctions imposed on defendant and his counsel by the IAS Court excessive to the extent indicated. Additionally, as plaintiff concedes, the sanctions should have been made payable, respectively, to the State Commissioner of Taxation and Finance and the Lawyers' Fund for Client Protection, not to plaintiff (22 NYCRR 130-1.3; *compare*, CPLR 8302, 8303, 8303-a). Concur—Murphy, P. J., Asch, Nardelli and Mazzarelli, JJ.