Wolf A. **POPPER** a/k/a Wolfgang Popper de Podhragy, Michael Franklin and Susan Alexander, Plaintiffs,

v.

Johannes **PODHRAGY** and Johanna Podhragy, Defendants.

No. 96 CIV. 7880(SAS).

United States District Court, S.D. New York.

Dec. 4, 1998.

Lawrence D. Waxman, Waxman & Waxman, P.C., New York City, for Plaintiffs.

Paul F. Condzal, New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs Wolf A. Popper a/k/a Wolfgang Popper de Podhragy ("Popper"), Michael Franklin, and Susan Alexander (collectively, "plaintiffs") have sued Johannes Podhragy ("Johannes") and Johanna Podhragy ("Johanna"), alleging (1) conversion of trust property which properly belonged to plaintiffs, and (2) unauthorized assumption of dominion and control over the trust property. The claims against Johanna were voluntarily dismissed without prejudice on April 1, 1998 because she had moved without leaving a new address and therefore she could not be served.[1]

Johannes failed to answer the Complaint and a default judgment was ordered against him on March 19, 1998. He now moves to vacate the default judgment pursuant to Fed.R.Civ.P. 60(b)(4) for lack of personal jurisdiction. For the foregoing reasons, defendant's motion is granted.

## I. The Parties

Plaintiff Popper is a resident of New York City. See Complaint at ¶ 2. Plaintiff Michael Franklin is a resident of the State of Massachusetts, and plaintiff Susan Alexander is a resident of the State of Florida. See id. at ¶ 3. Defendant Johannes Podhragy is a resident of Austria. See Affidavit of Johannes Podhragy at ¶ 2.

## II. Factual Background

Popper's paternal grandmother, Blanche Marchesi Baronne Anzon Caccamisi ("Marchesi"), lived in London and died there on or about December 15, 1940. See Complaint at ¶ 12.[2] Marchesi's will, properly executed and registered according to English law, created a testamentary trust to hold and manage Marchesi's residuary estate (the "Trust"). See id. at ¶¶ 13–15. The Trust property was to be distributed as follows: income for life to Baron Leopold Popper de Podhragy ("Leopold") (Johannes' father) and after his death the remainder, capital and income, was to be divided between plaintiff Popper and his sister, Evelyn Popper de Podhragy, in equal shares per stirpes.[3] See id. at ¶ 16. Evelyn Popper de Podhragy died in 1972 and is survived by her two children, plaintiffs Michael Franklin and Susan Alexander. See id.

The will appointed three executors and trustees to administer the estate: Alfred Creswell Loader, Marchesi's solicitor; Evelyn Popper de Podhragy, Marchesi's granddaughter; and Leopold, Marchesi' son. See id. at ¶ 17. Alfred Creswell Loader renounced his appointment as executor and trustee, and Evelyn Popper de Podhragy, a minor when Marchesi's estate was probated, could not serve her appointment and was released from her fiduciary duties. See id. at ¶¶ 18–19.

Leopold accepted his appointment and became sole executor and trustee of the Trust. See id. at ¶ 20. Leopold died in

---

1. Johannes Podhragy was properly served by Letters Rogatory and does not contest that service.

2. All of the factual allegations are drawn from the Complaint and are assumed, for the purposes of this motion, to be true.

3. While the record is unclear, it appears that Leopold is Popper's uncle.

January 1986 and defendant was appointed co-executor (with his mother Johanna de Podhragy) of his estate. *See id.* at ¶ 22. Defendant and his mother undertook to sell a portion of the Trust property at a Christie's Auction in London, England on or about December 16, 1991. *See id.* at ¶ 26. The auction was canceled and the Trust property was returned to defendants in December 1991. *See id.*

In about February 1994, Popper discovered for the first time, through communications and writings with Christie's Auction Department, London, of the existence of the remaining Trust property. *See id.* at ¶ 27. Although at that time plaintiff demanded to know the names and addresses of the consignors of the remaining Trust property, Christie's duty of confidentiality to consignors prevented it from disclosing the information without a consent order from the court. *See id.*

In or around July 1995, Popper learned that defendant was one of the consignors. *See id.* at ¶ 30. When Johannes was in New York City that year, Popper demanded that he return the remaining Trust property. *See id.* at ¶ 31. Defendant refused. *See id.* at ¶ 33.

**4.** In a letter to this Court dated June 25, 1998, defendant's attorney suggested that the Court lacks subject matter jurisdiction in addition to personal jurisdiction. However, plaintiffs are from New York, Florida, and Massachusetts, defendant is from Austria, and plaintiffs seek damages in the amount of $1,000,000. All the criteria for subject matter jurisdiction are satisfied. *See* 28 U.S.C. § 1332.

**5.** Several courts have held that the burden of proving the facts supporting jurisdiction remains upon the plaintiff. *See Donnely v. Copeland Intra Lenses, Inc.,* 87 F.R.D. 80, 85 (E.D.N.Y.1980); *Rockwell International Corp. v. KND Corp.,* 83 F.R.D. 556, 559 n. 1 (N.D.Tex.1979); *Dicesare Engler Productions, Inc. v. Mainman, Ltd.,* 81 F.R.D. 703, 705 (W.D.Pa.1979). These courts have held that on a Rule 60(b)(4) motion to vacate, there is no reason to "reverse the normal placement when a party challenges ... in personam jurisdiction through a Rule 12 motion to dismiss." *Rockwell,* 83 F.R.D. at 559 n. 1. Other courts have recognized that, "where a defendant who was on notice of the original

## III. Burden of Proof Under Fed. R.Civ.P. 60(b)(4)

Rule 60(b)(4) provides that a court may relieve a party from a default judgment when "the judgment is void." *See* Fed. R.Civ.P. 60(b)(4). A judgment is void if the court lacked personal or subject matter jurisdiction.[4] *See Triad Energy Corp. v. McNell,* 110 F.R.D. 382, 385 (S.D.N.Y. 1986). While other motions to vacate under Rule 60(b) are left to the district court's discretion, a 60(b)(4) motion must be granted if it is found that the court initially lacked jurisdiction. *See id.* at 384.

Although there is a conflict in the case law as to which party bears the burden of establishing personal jurisdiction in a Rule 60(b)(4) challenge, that issue was previously resolved at a pre-trial conference.[5] *See* Transcript of Pre–Trial Conference, June 29, 1998 ("Tr.") at 5. At that conference, the Court notified the plaintiff that it had failed to review the question of personal jurisdiction when it entered the default judgment. *See id.* at 4.

Once waived, lack of personal jurisdiction may not be raised by the court *sua*

proceedings, had an opportunity, at that time, to oppose jurisdiction by a Rule 12 motion" and fails to, the plaintiff is then prejudiced if the defendant skirts the burden on a later Rule 60(b)(4) motion to vacate a default judgment. *Rohm & Haas Co. v. Aries,* 103 F.R.D. 541, 544 (S.D.N.Y.1984). Therefore, "if the defendant ... chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a post-judgment rule 60(b)(4) motion." *See Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 401 (7th Cir.1986) (defendant ignored Summons and Complaint, allowed default judgment to be entered, and then made a 60(b)(4) motion; the court held that defendant should bear the burden of proving personal jurisdiction because it voluntarily chose not to answer the Complaint); *see also* Theresa L. Kruk, *Who Has the Burden of Proof in Proceeding Under Rule 60(b)(4) of Federal Rules of Civil Procedure to Have Default Judgment Set Aside on Ground that it is Void for Lack of Jurisdiction?,* 102 A.L.R. Fed. 811 (1991).

*sponte. See Zelson v. Thomforde,* 412 F.2d 56, 58 (3d Cir.1969) (error for district court to dismiss case sua sponte for want of personal jurisdiction, where defendant appeared without objecting to court's jurisdiction). However, the right to challenge a court's personal jurisdiction is not waived by default when a party fails to appear or to respond. *See Williams v. Life Savings and Loan,* 802 F.2d 1200 (10th Cir.1986). I therefore concluded that plaintiffs continued to bear the burden of proving personal jurisdiction over defendant. *See* Tr. at 5.

## IV. Standard of Review Under Fed. R.Civ.P. 12(b)(2)

■ Personal jurisdiction is determined by the law of the forum in which the court sits. *See Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir. 1963). Plaintiff must show, by a preponderance of the evidence, that jurisdiction over the defendant is proper. However, in attempting to defeat a jurisdictional challenge, plaintiff's initial burden is dependent upon the procedural posture of the litigation. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 196–97 (2d Cir.1990). A district court deciding a motion to dismiss for lack of jurisdiction "has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981).

■ Prior to discovery on the jurisdictional issues, plaintiff need only make a prima facie showing of facts sufficient to establish jurisdiction. Where the parties have conducted such discovery, and where defendant only challenges the legal sufficiency of jurisdiction, plaintiff need only aver facts, which, if credited, would suffice to establish a prima facie showing of jurisdiction. *See Ball,* 902 F.2d at 197. The Complaint and any affidavits are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff. *See Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 178 (S.D.N.Y. 1995).

## V. Jurisdiction Over Johannes Podhragy Under New York's Long–Arm Statute

Plaintiffs claim that this Court has personal jurisdiction pursuant to CPLR 302(a)(2), because defendant committed a tortious act within the state, and CPLR 302(a)(3)(ii), because defendant committed a tortious act without the state causing injury within the state.[6] Plaintiffs have not established jurisdiction pursuant to either subsection of CPLR 302(a).

### A. Jurisdiction Under CPLR 302(a)(2)

■ In general, where a defendant lawfully came into possession of a plaintiff's property, "a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property." *White v. City of Mt. Vernon,* 221 A.D.2d 345, 633 N.Y.S.2d 369, 370 (2d Dep't 1995); *see also* 23 N.Y. Jurisprudence 2d, Conversion, and Action for Recovery of Chattel, § 125.

■ Conversion occurs when a party, other than the property's true owner, per-

6. The relevant text of New York's long-arm jurisdiction statute reads:
§ 302. Personal jurisdiction by acts of nondomiciliaries
(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who ...
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he ...
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

forms an act inconsistent with the true owner's interest in the property. *See Price v. United States,* 69 F.3d 46 (5th Cir.1995); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chipetine,* 221 A.D.2d 284, 634 N.Y.S.2d 469, 471 (1st Dep't 1995); *MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.,* 193 N.Y. 92, 85 N.E. 801 (1908). If a party who lawfully comes into possession of another's property does not act to exclude the rights of the owner, ·a demand and refusal are necessary to render that otherwise lawful possession wrongful. *See Songbyrd, Inc. v. Grossman,* 23 F.Supp.2d 219, 222–23 (N.D.N.Y.1998); *see also White,* 633 N.Y.S.2d at 370.

■ It is unnecessary for me to decide whether Johannes came into possession of the Trust property lawfully or not. If Johannes came into possession of the property unlawfully, the conversion occurred in Austria in January 1986 when Leopold died and Johannes took possession of the Trust property. *See Solomon R. Guggenheim Found., v. Lubell,* 77 N.Y.2d 311, 567 N.Y.S.2d 623, 626, 569 N.E.2d 426 (1991); *see also Sporn v. MCA Records,* 58 N.Y.2d 482, 462 N.Y.S.2d 413, 415, 448 N.E.2d 1324 (1983). If Johannes came into possession of the Trust property lawfully through inheritance of Leopold's estate, then the conversion occurred when Johannes and Johanna attempted to sell the Trust property at a Christie's Auction in London in 1991. Either way, the conversion did not occur in New York.

Here, although Popper demanded that Johannes return the Trust property, in New York City in 1995, Johannes actually converted the Trust property, if lawfully acquired, in December 1991 when he and Johanna undertook to sell a portion of the Trust property at a Christie's Auction in London, England. The attempt to sell the Trust property would have turned their lawful possession of the Trust property

into conversion because they exercised "dominion and control" over the property to the "exclusion of the rightful owner." 18 Am.Jur.2d Conversion §§ 1, 28 (1985).

### B. Jurisdiction Under CPLR 302(a)(3)(ii)

■ To establish jurisdiction under CPLR 302(a)(3)(ii) Popper must show (1) Johannes' commission of a tort outside New York, (2) injury to plaintiffs in New York, (3) that Johannes should reasonably have foreseen New York consequences, and (4) that Johannes derives substantial revenue from international commerce.[7] *See Fantis Foods, Inc. v. Standard Importing Co., Inc.,* 49 N.Y.2d 317, 425 N.Y.S.2d 783, 786, 402 N.E.2d 122 (1980).

I have already found that Johannes did not convert the Trust property in New York.[8] Therefore the first prong of the CPLR 302(a)(3)(ii) analysis—that Johannes committed a tort outside New York—is satisfied.

■ The second prong—that plaintiffs were injured in New York—is not satisfied. "Commercial" tortious activity is covered by CPLR 302(a)(3). *See Lehigh Valley Industries, Inc., v. Birenbaum,* 389 F.Supp. 798, 804 (S.D.N.Y.1975) (breach of fiduciary duty and appropriation of business opportunity may be covered by CPLR 302(a)(3)(ii)); *Path Instruments International Corp. v. Asahi Optical Co.,* 312 F.Supp. 805 (S.D.N.Y.1970) (conspiracy to injure plaintiff's business covered by CPLR 302(a)(3)(ii)). However, for the purposes of CPLR 302(a)(3)(ii), the "requisite injury in New York must be of a direct nature and not a remote, derivative, or consequential injury which occurs in New York only because the plaintiff is domiciled ... here." *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 433 (2d Cir.1971) (Michigan corporation that "stole" plaintiff's customers in two states outside of New York and

---

7. The relevant text of CPLR 302(a)(3) is found at footnote 6, *supra.*

8. See Part V.A., *supra,* at 272.

caused plaintiff financial loss in New York not subject to jurisdiction under CPLR 302(a)(3)(ii)); *see also Black v. Oberle Rentals, Inc.,* 55 Misc.2d 398, 285 N.Y.S.2d 226, 229 (N.Y.Sup.1967) (Illinois manufacturer of parts used in trailer unit involved in accident in Massachusetts that injured New York domiciliaries not subject to jurisdiction under CPLR 302(a)(3)(ii)).

▪ Generally, in a conversion case, the tort and the injury will occur in the same location—where the conversion actually occurred. *See Sterling Nat. Bank & Trust Co. of New York v. Southern Scrap Export Co.,* 468 F.Supp. 1100, 1104 (S.D.N.Y.1979) ("[I]n the case of conversion, the acts and the injury coalesce so that the injury occurs not in New York where the plaintiff is domiciled, but at the place where the critical events took place"); *see also Security National Bank v. Ubex Corp., Ltd.,* 404 F.Supp. 471, 474–75 (S.D.N.Y.1975) (conversion of promissory notes in Texas did not cause injury to New York plaintiff within New York for purposes of jurisdiction under CPLR 302(a)(3)(ii)).

For example, in *Fantis Foods, supra,* the third-party defendant Synergal was a Greek cooperative of dairy producers organized under the laws of Greece. Defendant Standard, a New York corporation, entered into a contract with Synergal to import 1200 barrels of feta cheese, to be delivered to New York in four shipments of 300 barrels each. Synergal, however, sold the same 1200 barrels of cheese to plaintiff Fantis. Although Synergal substituted Fantis' for Standard's name on the bill of lading, Standard received the first shipment of 300 barrels of cheese. Fantis received the remaining 900 barrels.

Fantis sued Standard for the first 300 barrels. Standard, in turn, brought a third-party claim against Synergal for conversion of all 1200 barrels of feta cheese. The Court of Appeals held that, for the purposes of jurisdiction under CPLR 302(a)(3)(ii), Synergal converted the barrels either in Greece, when it sold Standard's cheese to Fantis, or on the high seas, when the bill of lading was changed. The court found that although Standard had suffered financial loss in the United States, it suffered its injury either in Greece or in transit, the place where the conversion occurred. The court held that the residence of a plaintiff within the state is an insufficient predicate for jurisdiction. *See id.* at 787, 402 N.E.2d 122 (jurisdiction must be based on "a more direct injury . . . than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there").

▪ Here, the injury occurred either in Austria or in London when Johannes and Johanna undertook to sell a portion of the Trust property at a Christie's auction. Although Popper suffered financial loss in New York, as Standard did in *Fantis Foods,* the actions that injured him occurred in Austria or London.

To base jurisdiction solely on the fact that plaintiffs live in New York and that the damage arising from an out-of-state tort occurred here would raise serious constitutional questions. *See Friedr. Zoellner New York Corp. v. Tex Metals Co.,* 396 F.2d 300, 303 (2d Cir.1968) (no jurisdiction under CPLR 302(a)(3)(ii) over Texas corporation that entered into agreement over the telephone with plaintiff doing business in New York where injury occurred in New Orleans); *see also Weisman v. Rosenker,* 84 Civ. 2258, 1985 WL 182 (S.D.N.Y. Jan.10, 1985) (defendant's conversion of violins in California may have caused pecuniary harm to plaintiffs in New York but did not constitute injury within New York for purposes of jurisdiction under CPLR 302(a)(3)(ii)). If the jurisdictional net was cast so wide, a tortfeasor who injures a New York domiciliary anywhere outside the state would be forced to defend actions brought in New York simply because the plaintiff suffered financial loss or residuary pain in New York. *See Stark Carpet Corp. v. M–Geough Robinson, Inc.,* 481 F.Supp. 499, 507–08

(S.D.N.Y.1980); *see also Fantis Foods,* 425 N.Y.S.2d at 786, 402 N.E.2d 122. This is a very tenuous "minimum contact" with New York. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

As there is no injury to plaintiffs in New York, it is unnecessary to discuss prongs three and four of CPLR 302(a)(3)(ii).

## VI. Conclusion

Because this Court lacks personal jurisdiction over defendant pursuant to either CPLR 302(a)(2) or CPLR 302(a)(3)(ii), defendant's Rule 60(b)(4) motion to vacate the default judgment based on lack of personal jurisdiction is granted. The clerk is directed to close this case.

SO ORDERED: