OPINION OF THE COURT
Leonard B. Austin, J.
Plaintiffs move for summary judgment on the first, second, third, seventh, ninth, tenth and eleventh causes of action of the amended supplemental complaint.
Background
In this derivative action brought on behalf of Columbia Realty Associates, a domestic partnership, plaintiffs seek, inter alia, recovery on certain promissory notes issued by defendant Mesibov, Altman and Amer M.D.EC., as well as indemnification from defendant William J. Mesibov, M.D. (Mesibov), on joint partnership liabilities incurred by the plaintiff partners of Columbia.
By order of this court dated August 22, 2002, Columbia’s motion for summary judgment was granted against defendant Mesibov Altman M.D.EC. on the fourth, fifth and sixth causes of action of the complaint in the principal sum of $200,981.48, together with interest at the rate of 8% per annum from January 30, 2001. Said causes of action were severed and judgment entered thereon. Although plaintiffs have made numerous attempts to enforce the judgment, their efforts have been unsuccessful.
By order of this court dated May 3, 2004, plaintiffs’ motion to serve a supplemental summons and amended complaint was granted. Prior to this motion, the action was discontinued as to Stuart Altman (Altman) and settled as to codefendants Alan J. Nelson, M.D. and Iris Feldman, as executrix of the estate of Ronald Feldman, M.D. The action, therefore, proceeds solely against defendants Mesibov, Mesibov Altman M.D.EC. and Mesibov Altman LLE
Plaintiffs now move for summary judgment under the amended complaint against Mesibov on the first, second and third causes of action for breach of fiduciary duty and on the seventh cause of action for indemnification under the partnership agreement; against Mesibov Altman LLF] as the successor to, and alter ego of, the judgment debtor, Mesibov Altman M.D.EC. on the ninth and tenth causes of action; and against Mesibov on the eleventh cause of action for common-law fraud. *724 When Columbia was formed in 1984 for the purpose of acquiring and managing a medical building, plaintiffs, Howard Kan-tor, M.D. and James Alexander, M.D., Mesibov and Altman were engaged in the practice of pediatric medicine in a professional corporation which, after its purchase by Columbia, conducted its practice at the premises located at 50 Underhill Boulevard, Syosset, New York.
When Alexander retired on or about July 1, 1992, he agreed to sell his stock interest back to the professional corporation. Thereafter, on or about July 1, 1995, Kantor also agreed to sell his shares to the corporation under similar terms and conditions. The professional corporation bought out the interests of both physicians pursuant to written redemption agreements under which both physicians were to receive monthly installment payments over a five-year period. Mesibov continued as a senior member of the professional medical corporation and managed the financial and business affairs of both Columbia and the medical practice until July 2000.
Discussion
A. Breach of Fiduciary Duty
All partners are fiduciaries of one another and, as such, they owe a duty of undivided loyalty to the partnership’s interests. As the Court of Appeals stated in Birnbaum v Birnbaum (73 NY2d 461, 466 [1989]):
“[I]t is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect. This is a sensitive and ‘inflexible’ rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary’s personal interest possibly conflicts with the interests of those owed a fiduciary duty ... [A fiduciary is, therefore, mandated] to single-mindedly pursue the interests of those to whom a duty of loyalty is owed.” (Citations omitted; see also, Meinhard v Salmon, 249 NY 458 [1928].)
In response to the allegations of multiple breaches of fiduciary duty against him — including, but not limited to, default in payment of Columbia’s mortgage to Chase Bank; concealment of default letter from partners; failure to remit rent to Columbia on behalf of tenant Mesibov Altman M.D.P.C., for approximately 15 months; withdrawal of $74,000 in cash from Co *725 lumbia while it was in default of its mortgage; unilateral withdrawal from Columbia of periodic payments of $2,000 under the guise of a management fee in derogation of the partnership agreement; misappropriation of cash from Columbia for his own personal use and benefit; and the issuance of promissory notes on behalf of Mesibov Altman M.D.EC. to Columbia to conceal various withdrawals of funds, Mesibov counters that he did not breach his fiduciary duty to Columbia, and, to the extent that he might have made any questionable or bad decisions or engaged in ill-advised strategies in his capacity as manager of Columbia, those judgments are, nonetheless, protected by the business judgment rule.
The business judgment rule does not protect corporate officers or partners who engage in fraud or self-dealing, or corporate fiduciaries when they make decisions affected by an inherent conflict of interest. (Wolf v Rand, 258 AD2d 401, 404 [1st Dept 1999]; Simpson v Berkley Owner’s Corp., 213 AD2d 207 [1st Dept 1995].) Under such circumstances, the burden shifts to the defendant to prove the fairness of the challenged acts. Mesibov has utterly failed to meet this burden.
Here, the challenged conduct was not economically or otherwise justified. It can only be fairly viewed as an attempt by Mesibov to exploit Columbia for personal gain in contravention of the fundamental implied covenant of good faith and fair dealing governing his fiduciary obligations to his other partners and, in the process, ultimately harm his own, as well as Columbia’s interests. While Mesibov has provided a lengthy recitation of all his efforts — “countless late and weekend hours” — on behalf of the partnership business, he offers no authority to support his claim that the specific conduct at issue herein is, in fact, protected by the business judgment rule. Rather, the conduct on its face is permeated with self-dealing, i.e., failure of the medical practice to pay rent to Columbia and withdrawal of money from Columbia: $74,981.81 (Dec. 1999) and $24,000 (Dec. 2000) without the knowledge and approval of other partners, among other things.
With respect to the monthly management fees Mesibov paid to himself from Columbia funds, the purported “management agreement” on which he relies to override the partnership’s prohibition on compensation to partners for management activities is unavailing. The partnership agreement expressly provides in paragraph 5 that “[n]o partner shall receive any salary for services rendered to the partnership.” Moreover, the purported *726 agreement upon which Mesibov relies was not executed by all of the partners. Kantor and Alexander dispute ever having seen or signed the document, as does Altman. No signature line is even provided for Alan J. Nelson, M.D. and Ronald Feldman, M.D. who were Columbia partners at the time the management agreement was purportedly executed on November 6, 1993. In the absence of an express agreement, Mesibov is not entitled to compensation in furtherance of Partnership Law § 40 (6). (See, Levy v Keslow, 235 AD2d 293 [1st Dept 1997].)
Under Mesibov’s self-described and self-appointed “stewardship,” Columbia’s mortgage went into default and approximately $93,000 in real estate taxes went unpaid while he used Columbia’s funds to pay himself a management fee and to prop up his medical practice.
Mesibov has failed to raise a factual issue requiring resolution at trial on the breach of fiduciary claims. Thus, plaintiffs are entitled to summary judgment against him on the first, second and third causes of action of the amended complaint.
B. Indemnification
With regard to the seventh cause of action wherein plaintiffs seek indemnification from Mesibov as and for the monies advanced by Kantor and Alexander on behalf of Columbia, it is undisputed that Kantor and Alexander, as partners in Columbia, contributed a total of approximately $329,585 to facilitate the closing of the sale of the Underhill Boulevard property for which they seek pro rata reimbursement from Mesibov.
Mesibov maintains, however, that neither he, nor any other partner, is obligated to indemnify the plaintiffs since there was no agreement among the partners to increase their capital contributions as set forth in paragraph 3 (b) of the partnership agreement (capital contributions). This argument, however, is untenable given the express language of paragraph 4 (a) of the partnership agreement which provides that the net profits and net losses of the partnership would be borne by each partner in proportion to his partnership interest “except that all losses resulting from the wrongful act of [szc] gross negligence of any partner shall be charged to him in full.” This is generally consistent with Partnership Law § 40. Under the circumstances extant, Kantor and Alexander are entitled to indemnification for the amount of the net partnership losses attributed to and arising from Mesibov’s wrongful conduct.
*727 C. Alter Ego
The ninth and tenth causes of action allege respectively that Mesibov Altman LLP is liable to the plaintiffs as the de facto successor to Mesibov Altman M.D.EC. on an alter ego theory. Thus, the assets of Mesibov Altman M.D.EC., and its predecessor, Kantor, Mesibov, Altman and Amer M.D.EC. were transferred to Mesibov Altman LLP at a time the transferor would be rendered insolvent and/or incapable of satisfying the obligations contained in the demand promissory notes on which this court ordered summary judgment on behalf of plaintiffs on September 9, 2002. (Debtor and Creditor Law § 273 et seq.)
“Generally, . . . piercing the corporate veil requires a showing that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) such domination was used to commit a fraud or wrong against the [plaintiff] which resulted in [that] plaintiffs injury.” (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141-142 [1993].) The corporate veil will be pierced to achieve equity, even absent fraud, “[w]hen a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator’s business instead of its own and can be called the other’s alter ego.” (Austin Powder Co. v McCullough, 216 AD2d 825, 827 [3d Dept 1995].) Generally considered are such factors as whether there is an overlap in ownership, officers, directors and personnel, inadequate capitalization, a commingling of assets or an absence of the separate paraphernalia that are part of the corporate form such that one of the corporations is a mere instrumentality, agent and alter ego of the other. (Matter of Island Seafood Co. v Golub Corp., 303 AD2d 892, 893-894 [3d Dept 2003].)
The Debtor and Creditor Law renders certain conveyances of assets void as to creditors, to wit: a conveyance made without fair consideration, rendering the transferor insolvent (Debtor and Creditor Law § 273); a conveyance made without fair consideration by a business person leaving him or her with unreasonably small capital (Debtor and Creditor Law § 274); and a conveyance without fair consideration made by a defendant during the pendency of an action for money damages or after the docketing of such judgment is void as to the plaintiff in that action (Debtor and Creditor Law § 273-a).
In addition, a conveyance made with actual intent to defraud is fraudulent as to both present and future creditors. (Debtor and Creditor Law § 276; see generally, 30 NY Jur 2d, Creditors’ *728 Rights and Remedies §§ 230-270.) Section 278 of the Debtor and Creditor Law allows a creditor, who has established that a conveyance is fraudulent and has a mature claim against the debtor, to seek an order from the court to set aside the conveyance to the extent necessary to satisfy his/her claim or to disregard the conveyance and attach or levy an execution on the property conveyed.
Mesibov does not deny that one year after the commencement of this action seeking a money judgment against Mesibov Altman M.D.EC. and approximately one month after plaintiffs moved for summary judgment on the promissory notes that had been issued by Mesibov Altman M.D.EC., Mesibov and Altman formed a new entity — Mesibov Altman LLE They have conducted the business of the limited liability partnership under the name “Kidfixers” thereby frustrating the attempts by plaintiff creditors to obtain satisfaction of their judgment. Both insolvency and lack of fair consideration are prerequisites to a finding of constructive fraud under Debtor and Creditor Law § 273. The burden of proving these elements is upon the party challenging the conveyance.
Whether the subject conveyance at issue herein rendered the debtor insolvent, and whether fair consideration was paid, are questions of fact which must be determined under the circumstances of the particular case. (Joslin v Lopez, 309 AD2d 837, 838 [2d Dept 2003].) While the relief to which a defrauded creditor is entitled in an action to set aside a fraudulent conveyance is generally limited to setting aside the conveyance of the property which would have been available to satisfy the judgment had there been no conveyance (Marine Midland Bank v Murkoff, 120 AD2d 122 [2d Dept 1986], appeal dismissed 69 NY2d 875 [1987]), a money judgment against the transferee is an available form of substitute relief. (Manufacturers & Traders Trust Co. v Lauer’s Furniture Acquisition, 226 AD2d 1056, 1057 [4th Dept 1996], lv dismissed 88 NY2d 962 [1996].)
It is axiomatic that summary judgment is a drastic remedy which should not be granted where triable issues of fact are raised and cannot be resolved on conflicting affidavits. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957].) Inasmuch as the record is devoid of documentary evidence sufficient to establish plaintiffs’ claims of fraudulent conveyance and to permit piercing the corporate veil on the alter ego theory as a matter of law, summary judgment on the ninth and tenth causes of action of the amended complaint must be denied.
*729 D. Fraud
To prevail on a cause of action for actual fraud as alleged in the eleventh cause of action against Mesibov, plaintiffs must establish that Mesibov made a representation of fact that was untrue and either known to be untrue or recklessly made, which was offered to deceive the other parties and induce them to act, causing injury. (Kaufman v Cohen, 307 AD2d 113, 119 [1st Dept 2003].) The suppression of material facts which a person, in good faith, is bound to disclose is evidence of, and equivalent to, a false representation. (Merrill Lynch, Pierce, Fenner & Smith v Chipetine, 221 AD2d 284, 285 [1st Dept 1995].)
To support their fraud claim, plaintiffs allege that Mesibov knowingly made a series of eight specifically enumerated material misrepresentations during the period of approximately 1997 through approximately March 2001 on which plaintiffs detrimentally relied tó their financial detriment and Mesibov’s enrichment. Determination of whether plaintiffs’ reliance was reasonable under the circumstances and whether Mesibov intended to deceive plaintiffs must be resolved by the finder of fact. (Talansky v Schulman, 2 AD3d 355, 361 [1st Dept 2003].) There is, therefore, no basis to award summary judgment to plaintiffs on the eleventh cause of action.
Accordingly, it is ordered that plaintiffs’ motion for summary judgment on the first, second, third and seventh causes of action is granted; and it is further ordered that plaintiffs’ motion for summary judgment on the ninth, tenth and eleventh causes of action is denied.